SAMUEL BUCHANAN *v.* FREDERICK G. SMITH AND FOUNTAIN BARKSDALE.

1. THE REBELLION—THE STATE—VALIDITY OF STATUTES ENACTED IN MISSISSIPPI DURING THE LATE WAR.—For the safety of the community, and to prevent utter confusion and disorganization, and within certain limits and for certain purposes, the acts of a state government while at war against the United States, must be accepted as valid—though all acts in furtherance of the rebellion and against the just rights of citizens, must in general be regarded as invalid. (The case of Texas v. White, 7 Wallace, 723, and Hill v. Boyland, 40 Miss., 620, cited and concurred in.) It is quite clear that the acts of the Mississippi legislature in 1862, suspending the statutes of limitations, have the validity of law.

2. LIEN OF MECHANICS AND MATERIAL MEN.—A mechanic or material man may lose his lien as against land, by the *bona fide* sale and conveyance of the land to an innocent purchaser for a valuable consideration, and without notice ; but in such case he will still retain, and may enforce his right of lien under the statute against the *building or other improvements erected or repaired by his labor or with his materials.*

3. RULE FOR CONSTRUING THE STATUTES IN FAVOR OF MECHANICS.—The claims of mechanics are favored by our laws, and courts will give a free interpretation to statutes in favor of the laborer.

Error to Yazoo county circuit court.     CAMPBELL, J.

Plaintiff in error assigned the following errors:

1st. The court erred in refusing the instructions asked for the plaintiff below.

2d. The court erred in granting the instructions asked for defendant Barksdale.

3d. The jury found contrary to the law and evidence.

4th. The court erred in overruling the motion of plaintiff for a new trial.

5th. The court erred in refusing to enter a special judgment against the buildings in the general judgments against Smith.

The facts are sufficiently stated in the opinion of the court.

*Hudson & Nye*, for plaintiff in error,

Insisted that the court erred in giving the instructions asked for the defendant Barksdale, which are to the effect that as Barksdale was a purchaser for a valuable consideration and without notice, the plaintiff has no lien on the buildings, and the purchaser took them discharged of the lien. It is also insisted that the court erred in refusing the instructions asked for the plaintiff, which are to the effect that, although Barksdale was an innocent purchaser for a valuable consideration without notice of the lien, yet that the lien did not cease upon the buildings, but only as to the land. The question must be determined by a proper construction of the statute regulating mechanics' liens. Rev. Code, 327. By art. 1st and art. 6th of that law, a lien existed in favor of plaintiff for six months after the money became payable. This suit was brought on the 17th of May, 1866, which was, in legal contemplation, within the six months after the money became due by the contract, viz: On the 25th of November, 1861. On the 29th of January, 1862, two months and five days afterward, this limitation was suspended and this class of liens expressly preserved, for twelve months after the termination of the then existing war. Acts of 1862, 235, § 1. This act is valid. Hill v. Boyland, 40 Miss., 620. The limitation thus suspended did not operate again until the 2d of April, 1867, twelve months after the peace proclamation of President Johnson. Griffin v. Mills, 40 Miss., 611. The only question involved is the lien upon *the buildings*, the land is entirely out of the question.

The law is to be construed and enforced most liberally for the protection of the rights of the mechanic and laborer. Harrison v. Breeden, 7 How., Miss. R., 670; 2 How., Miss., 874. It is not necessary that the contract shall be in writing. The lien exists if the suit is brought *within the time prescribed by the statute.* 7 How., 670; Acts of 1862, p. 235.

It is admitted that the plaintiff has lost his lien upon the land, but upon that only. But by art. 1, Rev. Code, 327, it is provided that " every house or other building, etc., shall be liable for any debt contracted and owing for labor performed or materials furnished, and such debts shall be a lien on such buildings," etc. In short, the meaning of this statute is that if suit is brought within six months, the lien on the buildings is perfect, but that on *the land* is lost as against an innocent purchaser, unless reduced to writing and filed for record. Art. 5 of the Code above cited. The statute of 1857 neither authorizes or requires the recording of a contract to create or preserve a lien on the *buildings*. Martin v. Nash, 31 Miss., 324.

Articles 1, 2, 3–6–11, 12, and 13, expressly provide for liens on the buildings, where there is none on the land, and directs the character of suit, judgment, etc., in such cases. The contract not being in writing, is regulated by articles 1–6, 7, 8, 9, 10, 11, 12, and 13. See also, 36 Miss., 19.

*W. P. Harris*, on same side.

This suit was brought 17th May, 1866, to enforce the mechanics' lien on buildings erected by the plaintiff, on land belonging to Smith, one of the defendants in error. The work was completed November 26, 1866, and the price was due at that time. The contract was by parol, and but for the statute of 1862—acts, p. 236, the lien given by the Revised Code, page 327, would have been lost. But the lien existed on the 29th January, 1862, and was preserved by the act of that date, and was in full force at the commencement of this suit, as to the property to which it attached. It may be assumed then that, if the lien did exist on the buildings, or on them and the land, it was not barred by lapse of time.

After the work was completed, and before the suit was brought, Smith sold to Barksdale, who bought without knowledge of the lien or that a note was given in settlement for the work. Hence arose the defense in this case. It is clear the plaintiff brought his case within the terms of the Code.

Under a contract, he was employed to, and did erect build-

ings on the land, and the Code gives him a lien on them and the land, for the payment of any labor or material furnished for their erection, etc.  Rev. Code, 327, art. 1.  After giving a lien on both buildings and land, it provides that such *lien* on the *land* shall take effect as to purchasers, etc., for value in good faith, without notice of such lien, from the time of the recording of the contract, or the commencement of suit to enforce it.  The plain meaning of this is, that as the lien, attaches to both land and buildings, and as the qualification as to purchasers is confined to the *land only*, that the lien on the buildings remains, and will be enforced even against *bona fide* purchasers, without notice.  It is plain that art. 12 and 13, provides for enforcing the lien against the buildings alone, notwithstanding any inconvenience that may attend it.

In the case of the lien on buildings, in favor of the mechanic, no exemption from it is secured to subsequent purchasers, *bona fide*, without notice.  The act of 1857, certainly did not lessen the efficiency of the lien on buildings, so that no sub-sequently acquired title or encumbrance can claim exemption from it, while it alters the previous lien on the land, for whereas, before, no subsequently acquired claim could defeat the lien, now as to the land, a subsequently acquired title or encumbrance, obtained in good faith, will defeat it, unless the contract was recorded, or suit brought prior to the acqui-sition of such title.

The instructions of the court below for the defendant, and the refusal to give those requested by the plaintiff, show that the court took the precisely opposite view to the statute, and therein (as I think), erred.  The plea by Barksdale puts nothing at issue except what he denies.  It is stated that he promised; he was made a party because he had acquired an interest in the land.  He does not anywhere deny that the work specified in the account was performed.  It was estab-lished that the workman was to receive so much per month, and also the number of months he was engaged.  This is the value of the work done.  It matters not what rate of compensation may have been adopted, it was the debt owing

for work done in erecting the buildings. The giving of the note on settlement in 1861, and the substitution of the new one for it in 1865, was neither a waiver of the lien nor a satisfaction of the debt. It was a mere change in the form of the evidence of the debt, nothing more, and cannot effect the lien. Jones v. Shawhan, 4th Watts & Serg., 257; 4 B. Monroe 87; Kingsly v. Buchanan, 5th Watts, 118; 9 Missouri, 67; 7th Black., p. 218.

The court should have granted a special execution, or else have set aside the verdict, for it is very plain that the plaintiff was entitled to his lien on the buildings. The act of 29th January, 1862, suspended the limitation of the lien. The limitation of the time to sue for its enforcement is expressly maintained in the act.

*Wilkinson & Bowman,* for defendant in error.

Smith gave his individual note in November 1861, for balance due on the work done on the plantation. It did not express any consideration. In 1865, Smith substituted another note, stating the consideration, " work and labor on the plantation as carpenter and sawyer." The bill of particulars shows that the whole amount has been paid in cash and by Smith's note for balance. The lien given a mechanic is but a right or privilege to satisfaction out of the building erected by them, and may be waived or abandoned. This the plaintiff did by taking the personal liability of Smith, to whom he must now look for his money. This lien is evidently an afterthought, and its enforcement would be a fraud on Barksdale, an innocent purchaser without notice. The act of 1857 provides that every house, etc., built within the state, shall be liable for the payment of any debt contracted and owing for labor, etc., and that such debt shall be a lien on such, etc., and on the land whereon it is erected, but such lien shall only take effect as to innocent purchasers, etc., from the time of the filing of the contract for record, or the commencement of suit within the proper time. Rev. Code, art 1, p. 327.

There was no written contract in this case, and conse-

quently no lien on the land. The word land includes not only the face of the earth, but everything under or over it. And therefore, if a man grants all his lands, he thereby grants all his mines, his houses, as well as his fields and meadows. Book 2, 1 Bl. Com., 18; Kent's Com., 40; 2 Bouvier's Law Dic. 4; 1 Cruise on Real Prop., 18; 9 Day R., 354. The words of the statute are, " the land whereon the building is erected, including the lot or cottage." This includes more than the ground simply, upon which a house is built. 1 Bouvier's Law Dict., 358; 1 Burrill's Law Dict., 311; Chitt. Gen. Pr., 175; 1 Burrill's Law Dict., 311, 312.

It is insisted by plaintiff in error that the act of the legislature, 29th Jan., 1862, will save the bar of plaintiff's action in this case. The supreme court of the United States has decided that all acts and proceedings of the states that attempted to change their form of government, was illegal and void after such attempt. Mauran v. Insurance Co., 1st Wallace, U. S. R., 13, 14. This court will take judicial notice of the date of the ordinance of secession, and that, at the date of the act of 1862, Mississippi was in armed hostility to the United States. Hence that act is illegal and void, as it effects the running of the statute of limitations, and this suit ought to have been commenced within six months after the money became due. Rev. Code, art. 6, p. 328. The bar had attached before suit brought.

*Hudson & Nye,* for plaintiff in error, in reply,

Deny the proposition that the closing of an account by note operated to discharge the lien created by statute, securing the payment of the money. No authority can be found in the books to support such a position. The note is no payment, but only higher evidence of the indebtedness. Toby v. Baker, 5 Johnson's R , 68; 20 Johnson, 288. Had Buchanan taken other security on the note, and in consideration thereof, accepted the note in absolute payment of the existing debt, then his lien would have been gone.

In reply to the point that the owner of the soil was owner of all beneath and above it, we say that its general applica-

tion is to fixtures. What are fixtures is a question of great doubt, and depends upon many circumstances. 2 East., 88; 1 Taunt., 20; East., 55; Ferard, 281; Wend., 637; 2 Peters, 137; 6 Greenl., 404; 1 Fair, 429; 4 Mass., 514; Davis R., 527. See also 36 Miss., 19.

We deny that the supreme court of the United States has decided that the act of our legislature of 1862, suspending the operation of the statute of limitations, was 'illegal and · void. Mauran v. Insurance Co., 6 Wallace. We deny that that case involved the question as a point of decision. Even if that court had so decided, this court is not bound by it. This court has settled this question in the case of Green v. Sizer, and Griffing v. Mills, in 40 Miss., R. That this state was ever out of the Union, no court has yet decided. That the ordinance of secession was null and void, was declared by Congress, settled by the war, and decided by our state convention of August, 1865. In legal contemplation she was in the Union, and could and did legally exercise her legislative functions in January, 1862. But if the state was but a *de facto* government, her acts were not *void*, but *voidable*. Rev. Code, 138, art. 194. But if void they were remedied by the convention of August, 1865.

SIMRALL, J.:

This was a suit brought by Buchanan, against Smith and Barksdale, in the circuit court of Yazoo county, to enforce a mechanic's lien on certain buildings on the Excelsior plantation. The claim is for work and labor done for Smith, in 1861, in sawing lumber for and erecting and building a gin house, servants cabins, and overseer's house. The work was finished in November, 1861, and note dated 25th November of that year, for seven hundred and fifty dollars, was made and delivered by Smith to Buchanan, for the balance due. At the time the work was done, and the note executed, Smith was the owner of the Excelsior plantation, but in January, A. D. 1862, Smith sold and conveyed the plantation to Fountain Barksdale for a valuable consideration, and without notice of the lien of Smith. There was judgment by *nil*

*dicit* final against Smith. Barksdale appeared and pleaded *non assumpsit*, with notice that he would offer to prove that the plaintiff was not a carpenter; that the note was not executed on the day it bears date, but was made in 1865, and that the purchase was made in good faith, for value, and without notice of plaintiff's claim. There was a verdict and judgment for defendant Barksdale.

Although the statute allows these sort of proceedings to be brought in a court of law, it evidently contemplates that the defense shall be specifically stated rather than that it should be developed by evidence under a general issue. The questions presented for decision are, substantially, two:

1st. That the lien asserted is barred by the six months' statute of limitations.

2d. If it ever existed as to Smith, it does not operate as against Barksdale, he being an innocent purchaser for value.

1st. As to the elapse of time, the work was finished in November, A. D. 1861. A few days after, on a settlement had between Smith and Buchanan, the former gave his note to the latter payable on demand. The testimony was that Buchanan carried this note about his person until some time in 1865, and being much worn, he applied to Smith to give him another note of the same tenor of the original, and to be in substitution of it, which was accordingly done. It is insisted here by the plaintiff in error that he is not barred, because of a preservation of his remedy by a suspension of the statute of limitations by the act of December, 1862, the time within which he might sue not having then expired. On the other hand, the defendant in error meets and seeks to obviate this by the proposition that the suspension act of 1862 has not the force and effect of law, because the body by which it was passed was not a legislature in any sense, or for any purpose—the political power of the state being then in the hands of those hostile to, and in insurrection against, the United States.

In the case of Texas v. White, 7 Wallace, S. C. Rep., 723, the court, speaking of the legislation had in Texas, says, in

VOL. I—7 .

substance: When the government of that state, in all its departments, was established in hostility to the United States, whilst such government had full control of the state, and was its only actual government, although such political organization was unlawful and revolutionary as to the United States; yet, for the safety of communities, and to prevent the utter confusion and disorganization into which society, in all its interests and relations would be thrown, within certain limits, and for certain purposes limited by the exigencies and necessities, "the acts of such government must be accepted as valid."

Enumerating some such acts, and without attempting to prescribe precise limits, the court says: "Acts necessary to peace and good order among citizens—such, for example, as sanctioning and protecting marriage and domestic relations, governing course of descents, regulating the conveyance and transfer of property, providing remedies for injuries to person and estate, and other similar acts, which would be valid if emanating from a lawful government, must be regarded, in general, as valid when proceeding from an actual, though unlawful government. And that acts in furtherance and support of rebellion, and against the just rights of citizens must, in general, be regarded as invalid."

Within the principle and reasoning here laid down, it is quite clear that the acts of 1862 suspending the statute of limitations have the validity of law. It was so adjudged by our predecessors in the case of Hill v. Boyland, 40 Miss. Rep., 620. The "six months" had not expired at the date of the act of 1862, within which suit might be brought, nor had the suspension expired on the 17th day of May, 1866, when the suit was brought.

The remaining question is: Did the purchase by Barksdale of the Excelsior plantation without notice, protect him against the lien on the buildings?

The 1st article of the mechanics' lien act of the Code, p. 329, gives a lien for work, labor and materials, done, performed and furnished, in and about erecting buildings, structures,

etc., on the land and buildings, etc. " But such lien on the land shall only take effect as to purchasers and incumbrances in good faith for valuable consideration, without notice of such lien, from the time of filing for record the contract in the probate clerk's office of the county where the land is situated, or of the commencement of the suit," etc.

The 3d art. subjects buildings erected by the tenant, and also the estate of tenant. By the 12th art. there may be a judgment against the building and land, or against the building alone, and special execution may issue describing the property to be sold.

Art. 13. If the building alone be sold, the purchaser may enter on the land, and remove the same with reasonable dispatch. By his purchase, he acquires the same, free from any prior incumbrance on the land. If the land be sold, the deed shall convey such estate therein, as the owner or builder, as the case may be, had at the time when the lien under which the sale is made, attached thereon, or at any time afterwards, subject to all prior incumbrances, etc.

Construing the several provisions of the statute together, we think it quite clear that there may be a lien on the buildings where there is none on the land.

The first section imparts a lien in favor of the mechanic, on both the land and the buildings. But if the land is sold, then the purchaser takes it discharged of the lien, if he bought in good faith, without notice, and for value. If there be a written contract, filed in the proper office for record, and recorded, then by a subsequent article, such filing for record is constructive notice to purchaser, and the lien subsists against him. So too, the same effect is accomplished, if the land be purchased after suit is brought. The suit asserting the lien, being in law, notice to the purchaser. The lien is purely statutory, and it was entirely competent for the legislature to create it, and place it under such conditions as it pleased.

By art. 6, suit must be brought within six months after the money becomes due and payable. If not brought within that time, the lien is gone. If the mechanic desires his lien to

continue against all persons who might acquire interest in the land, then he must put the contract in writing, and file it for record in the probate clerk's office.   If suit be brought in due time, all persons supposed to have interests in the land, must be made parties defendants, and opportunity is given them to make defense.   A subsequent purchaser, as the defendant in error, Barksdale, is a necessary defendant, and if he shows, as has been done in this case, that he purchased fairly, without notice of the mechanic's claim, and for value, then the land upon which the buildings are erected, is acquitted in his hands of the lien.

This is the extent to which the statute goes for his benefit and protection.   Throughout, there is kept up the idea, that there may be a lien on the improvements, whilst there is none on the land.   As to the " buildings," the purchaser takes the risk; he is put on inquiry.   If he takes the title to the 'land, without knowledge, he acts at his peril, and assumes the consequences.   His deed passes to him the legal title to the land and buildings on it, subject, however, to the tacit " lien " in favor of the mechanic and material man on the buildings.

The counsel for defendant in error has pressed upon us the equity doctrine of " protection of innocent purchasers," and has referred us to the cases illustrating it.   We think that doctrine and that class of cases has no application.   We are considering a claim created, defined, and limited by positive statute.   The same observation may suffice in response to the argument deduced from the common law of what is included in the ownership of land on its surface, and downwards towards the bowels of the earth.   We find by the terms of the 1st article of the statute that at the time of the sale to Barksdale, the lien of Buchanan attached to both the houses and land, as things made and intended to be made distinct, as appears by the whole scope of the act.   So that if Smith had continued owner of the property in its entirety, it would have been liable to the lien.   By his purchase Barksdale acquired the property free from the lien on the land.   But

the other objects to which the lien was adhering were not, by the terms of the statute, absolved from it. This view is confirmed by reference to other provisions already referred to. There may be by the 12th article, judgment against the land and buildings, or against the building alone. The execution must describe the property to be sold. If the buildings alone are sold, the purchaser, of course, acquires no interest in the land; but he "may enter and remove the buildings with reasonable dispatch." In English v. Foote, 8 S. & M., 444, originating under the act of 1838, which gave the lien against the building "in preference to any other lien originating *subsequently to the commencement of the building* or date of the contract therefor," it was held that a building could not be subjected to this lien against a prior mortgage which bound the land on which the building was erected.

In Otley v. Hareland, Clark & Co., 36 Miss. Rep., 38, the act of 1840 (which materially enlarged the right conferred by the preceding legislation), came into discussion. Among other things, it provides that for work and labor and materials furnished upon any building, "there shall be a lien upon the buildings and materials aforesaid, and said building and materials shall not be subject to any other lien whatsoever until the aforesaid lien shall have been canceled." It was held by the court that this act plainly meant to make the lien of the mechanic and material man, as to the buildings and materials, paramount and superior to any lien subsisting on the land. This interpretation is made quite clear by a subsequent provision "that if there be no other lien on the lot or parcel of land on which the building is erected, it also shall be chargeable to the extent of the estate of the party procuring the improvements to be erected. We concur in the sentiment uttered in this court in 1838 in the case of Buck v. Brian, 2 How., 880.

The claims of the mechanic are favored in law. They are often unlettered men, and courts will uphold the policy in giving statutes a free interpretation in favor of the laborer. The contract in this not having been reduced to writing and

filed for record in the probate clerk's office, of Yazoo county, before the sale to Barksdale, and suit not having been brought before said sale, we are of the opinion that the land is not subject to the lien. The statute not requiring a record of the contract, or suit to enforce the lien, in order to preserve the lien on the buildings against a subsequent purchaser or incumbrancer, for value and without notice before the sale or incumbrance is made, we are further of opinion that the buildings on the premises, as against Barksdale, the defendants in error are chargeable with this lien. Wherefore the verdict and judgment in favor of the defendant in error, Barksdale, is set aside and reversed, and a *venire facias* to be awarded in the court below. The judgment as to Smith will stand.