# *Ex parte* **Schmidt & Smith.**

## *Mandamus.*

1.   *Mandamus; when will not lie.*—Mandamus will not lie to correct errors in the final judgments or decrees of an inferior court; and where the injury sought to be redressed consists in the refusal of the lower court to enter proper judgment upon the verdict of a jury, the remedy is by appeal, and not by mandamus.

2.   *Code of 1876, § 3440 construed.*—Under section 3440 of the Code of 1876, the husband of a married woman may contract for the erection or repair of buildings situated on lands forming part of her separate estate, and the lien of a mechanic or material man for work done or material furnished in the erection of such building, attaches to the property, without the participation of the wife in the making of the contract.

3.   *Judgment; what proper in such a case.*—Where the plea only puts in issue the right of the husband to make the contract under which the work is done, and material furnished, and the jury find a general verdict for the plaintiff, the court should enter judgment declaring a lien and providing for its enforcement. The failure to enter such a judgment, is an error which can be corrected by amendment *nunc pro tunc.*

Application for mandamus to Hon. JAMES Q. SMITH.

This was an application for a mandamus to compel the Circuit Court of Montgomery county, Hon. J. Q. Smith presiding judge, to enter up a proper judgment upon the verdict of a jury, and to vacate and annul the judgment entered. The facts necessary to the decision, are as follows : Schmidt & Smith, the relators, were partners and dealers in building materials in the city of Montgomery. At the request of one David S. Arnold, they did certain work and furnished certain materials in the renovation of a house owned by the wife of said Arnold, as part of her separate estate. The complaint averred that said David, for himself and as the agent of said Caroline, applied to the plaintiffs and purchased certain materials, which were used on said house, and had a large amount of painting done on the same. It further alleges that the said Caroline and David Arnold had entered into and occupied such residence, after said materials were furnished and said work done ; that the materials furnished and work done were for the immediate use, benefit and enjoyment of the said Caroline Arnold, and that she is now enjoying the same as a residence for herself and family. The complaint was demurred to on the ground, among others, that it failed to show that Caroline Arnold ever authorized her husband to make the contract with the plaintiff. This

[Ex parte Schmidt & Smith.]

demurrer was overruled. The defendant, Caroline Arnold, then filed a special plea, setting up that she was a married woman; that the property sought to be condemned was part of her statutory separate estate; that she never authorized her husband to make the contract; that she had never ratified said contract, and then occupied the house by virtue of the wish and command of her husband, and not otherwise. Issue was taken on this plea. The jury returned the following verdict: We, the jury, find for the plaintiffs and assess their damages at one hundred and sixty-seven 65-100 dollars. And upon this verdict the court entered a personal judgment against both defendants. The plaintiffs thereupon moved for a judgment of condemnation against the property of Mrs. Arnold. This motion was refused, and the plaintiff applied to this court for a mandamus to compel the circuit judge to grant the motion.

WATTS & SONS, for the petitioners.—Mandamus is the only means to enforce the rights of the plaintiff. If upon appeal this court should adjudge that the judgment entry in the court below is wrong, the decision would be a reversal of the case as an entirety, and would not serve the purpose or give the relief sought. The verdict of the jury was a finding for the plaintiff as to all the issues joined between the parties, and one of these issues was whether the estate of Caroline Arnold was subject to claim of plaintiffs. As to the effect of the verdict, see 7 Port. 234; 10 Mass. 64; 31 Ala. 200; 33 Ala. 110; 19 Wend. 408. A personal judgment on a suit to enforce a mechanic's lien is erroneous and unwarranted.— Phillips on Mechanic's Liens, 599; 20 N. Y. 249; 36 How. Pr. 73; 4 E. D. Smith, 721. There is no exception in the terms of the statute in favor of married women, and there is none in the nature of the case or in reason, policy or convenience.

F. S. FERGUSON, contra.—Mandamus is not the proper mode of correcting the error, if any there be in the action of the court. The judgment rendered is a final judgment, determining the right of the parties, and appeal is the specific remedy. Again, this writ will lie to compel an inferior tribunal to act, but can not control its action or point out how it shall act.—Lamar v. Comn'rs of Marshall Co., 21 Ala. 772. The court below did not err in refusing to enter up a judgment condemning the property of Mrs. Arnold and ordering a sale. In such cases the law is strictly construed and the verdict must be strictly followed.—Phillips on Mech. Liens, § 449; 1 California, 183. The issues submitted to the jury

were—1st. Indebtedness; 2d. Liability of Mrs. Arnold; 3d. The lien. If the jury failed to respond in their verdict, the court can not supply the omissions. On the verdict they were entitled only to a personal judgment. The evidence failed to show that Mrs. Arnold ever authorized her husband to make the contract, and in the absence of such authority the husband, as such, has no power to do so.—33 Iowa, 224; 26 Iowa, 297; 33 Ver. 457.

STONE, J.—To authorize the issue of the writ of mandamus, there must be a clear legal right, and no other adequate remedy. The writ lies to compel the execution of ministerial duties, in all proper cases. As to judicial functions, the rule is different. The writ will be awarded to compel courts to entertain jurisdiction and pronounce judgment in the premises. It will not be awarded to order or direct what judgment shall be rendered in any given case; nor can its powers be invoked to correct any error in the final judgment or decree of an inferior court. The reason of this latter rule is, that there is an adequate remedy in appeal, which lies from all final judgments or decrees of courts of record.—2 Brick. Dig. 239-40, §§ 2, 3, 4, 6; *State ex rel. v. Bowen*, 6 Ala. 511; *Bridges v. Miller*, 3 Ala. 746; *Ex parte Henry*, 24 Ala. 638; *Ex parte Echols*, 39 Ala. 698; *Ex parte Hendree*, 49 Ala. 360.

In the present case an issue was formed and submitted to a jury, who returned a general verdict for the plaintiffs, assessing damages. Thereupon the court rendered judgment for the plaintiffs, but failed and refused to declare by its judgment a lien for mechanic's work and materials, claimed in the complaint. The court thus pronounced final judgment on the verdict. The claim is that the court did not go far enough, and award to plaintiffs all they were entitled to under the verdict. If this be so, it is simply a case of erroneous judgment, not a failure or refusal to entertain jurisdiction, or to render judgment; at most, an error in the judgment rendered, not an erroneous refusal to adjudge. If the verdict authorized the judgment claimed, then the court's failure to award it was an error in the final judgment. It is difficult, if not impossible, to discriminate between such an error as this and the award of a judgment, larger or more extended than the verdict warrants. Each is the exercise of the judgment of the court over the entire merits of the controversy; the one in awarding too little, the other in awarding too much. For the correction of such an error as this, appeal is the remedy, and mandamus will not lie. The writ of mandamus must be denied, with costs.

We might rest this case on the point declared above, without further discussion. The question of merit, however, has been very fully and ably argued; and inasmuch as it will come again before us if we leave it undecided, we feel it our duty to announce our conclusions, so that the proper course may be pursued in the court below.

Our present statutory system, defining and declaring liens of mechanics, employes and material men, for buildings, erections, or improvements upon lands, or for repairing the same, are of recent enactment, and their construction, in the main, remains to be settled. Such liens were unknown to the common law, and, hence, are purely of statutory creation. They are to be construed as other statutes, introductive of a new policy, are construed; and while it is not permissible, under the guise of interpretation, to extend the provisions of the enactments to cases not provided for, it is equally unjust and unauthorized to emasculate the statutes by a narrow or strict construction of their beneficial provisions. Their general policy was and is to secure to the artisan and laborer the just reward of his labor, and the lien conferred is somewhat analagous in its aims to the equitable lien of a vendor for unpaid purchase-money of lands sold. It is inequitable, says the law, that one shall enjoy another's lands, and not pay the promised price. So, the policy of the statute we are considering, declares that it is inequitable that one shall enjoy another's goods, or the products of his labor and skill, without making just compensation therefor. The same reason which upholds the policy of the one, vindicates the justice of the other. Our legislative policy for the last thirty years, and the overthrow of private fortunes consequent upon our late civil war, have had the effect to place much of the property of the country in fiduciary hands; and the beneficiaries of many estates, while they could and did enjoy the products of their property, were left without power to fasten a charge upon it by any contract of theirs. This, in many instances, worked great hardship, and inflicted grievous wrong; and our very liberal exemption statutes, in the absence of special waiver, have placed the entire property of much the larger part of our population beyond the reach of legal process. The manifest and deplored result of all this has been, that the honest toil of the laborer, and the merchandise of the material man, have often been appropriated, by a faithlessness, in some cases highly culpable. These considerations, no doubt, influenced the legislature in declaring the very liberal and comprehensive system of liens, now found upon our statute book. It is our duty, in construing these statutes, to give to the language its natural import and

scope, and thus carry into effect the intention of the legislature, as far as it can be gathered from the language employed.—Phillips on Mechanic's Liens, sections 14 to 18 inclusive.

These liens being of statutory origin, it very naturally followed that, while a general policy pervades them all, great diversities of detail are found in the various legislative systems. The diversities exist alike in the scope of the lien, the conditions of its creation, and the manner of its preservation and enforcement. Hence, what will or will not uphold such lien under one system of statutes, is often a very poor guide in controversies arising under other legislation. Judicial precedent is seviceable in furnishing canons of interpretation, and analogies to aid and direct judicial inquiry; but, when the statutes are essentially different, their assistance extends no further. The inquiry, at last, in all such cases is, what is the legislative will and intent, as expressed in the statute. All the authorities agree that the lien can not be extended beyond the provisions of the statute conferring it, and that there is no limit or restraint on legislative power to create such lien. It is but a mode of securing the payment of a debt.—Phil. on Mech. Liens, §§ 98, 99, 100. The property of persons not *sui juris* may be made subject to such lien; and the legislature may prescribe in what manner the lien may be created. Speaking of the improvement of estates of married women, it has been well said, "This statute ought to receive a liberal construction, and not such a one as would put it out of the power of a husband and wife to improve the property of the wife for their joint benefit. If the wife can not contract for such a purpose, there is a stronger reason than in ordinary cases, why the mechanic should retain a specific lien as a security for the labor bestowed. Disabilities are for the protection of parties incapable of contracting, and should not be converted into instruments of fraud or injustice."—7 Ind. 125.

Our statute is peculiar and very comprehensive. It declares that "every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material," &c., "for any building, erection, or improvement upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor," &c., "shall have for his work or labor done, or materials," &c, furnished, a lien to the extent and in the manner by this chapter provided, upon such building, erection or improvements," &c.—Code of 1876, § 3440. "Every person, including all *cestuis que trust*, for whose immediate use, enjoyment or benefit, any building, erection, or improve-

ment shall be made, shall be included by the words owner or proprietor thereof, under this chapter, not excepting married women as to their separate property."—Section 3460. We think this language is so clear as to preclude controversy. The contract which creates the lien, may be made by the owner or proprietor of the property, or his agent or trustee. The husband is, by law, made the trustee of the wife's separate estate, and, as such trustee, he can, so long as he remains trustee, contract for such building, erection or improvement, without the participation of his wife in the making of the contract. If it be urged that under this large power, he may entail embarrassment and ruin on his wife's estate, her safety will be found in the authority the statute gives her to have him removed, if he be faithless to the trust. Section 3460 must not be overlooked in this connection. It declares that cestuis que trust, even married women as to their separate property, are "included in the words owner or proprietor," and that they may make such contract, conferring a lien, if the building, erection or improvement be for their immediate use, benefit or enjoyment. We hold, then, that the husband as trustee, so long as he remains such, has a general power to improve his wife's separate property, by erecting buildings, &c., and that the mechanic, material man, &c., has the statutory lien on the property, if he comply with the terms of the statute. We hold further, that the wife by her own contract for building, improvement, &c., may fasten a lien on her separate property, if the building, erection or improvement be for her immediate use, enjoyment or benefit.

The complaint in the present case is not confessedly framed under either phase of the statute above presented. It does not aver that Mr. Arnold made the contract as trustee, nor that he was trustee. It possibly shows a prima facie case of statutory separate estate in Mrs. Arnold, but for aught that appears, some other person may have been her trustee. It does aver that he made the contract as her agent, and that the work was done on the house, and the materials furnished, for the immediate use, benefit and enjoyment of Mrs. Arnold, the wife, "and that she is now enjoying the same as a residence for herself and family." We think this is a substantial averment that Mrs. Arnold made the contract through her husband as agent, and that the building on which the materials and work were bestowed, were for the immediate use, enjoyment and benefit of Mrs. Arnold. This brings the case directly within the statute; and the complaint being unobjectionable in other respects, it must be adjudged sufficient. The plea puts in issue only a single

[Hooks v. Brown et al.]

material averment of the complaint; namely, the authority of Mr. Arnold to make the alleged contract as agent of Mrs. Arnold. Every other material averment in the complaint must be treated as admitted. The jury charged with the trial of the issue, had before them, and could consider only, the question of agency *vel non*. The general verdict for the plaintiffs must be treated as a finding that the plaintiffs' averment of agency is true, and the plea false. This leaves nothing to be done except to pronounce judgment. The lien in such case, its extent, and the mode of making it available, are all defined by the statute, and the court should have made the judgment to conform to it. This is an error, however, which the court below can correct, by judgment rendered *nunc pro tunc*.