CENTRAL TRUST CO. OF NEW YORK *v.* SHEFFIELD & B. COAL, IRON & RY. CO. *et al.*

*(Circuit Court, N. D. Alabama, N. D.    February 12, 1890.)*

1. MECHANICS' LIENS—IMPROVEMENTS—COAL MINES.
     A coal mine is an improvement on land, within the meaning of Code Ala. 1886, § 3018, giving a lien to every mechanic or other person doing work or furnishing material, fixtures, or machinery "for any building or improvement on land."

2. SAME—MATERIALS.
     Coal-cars used in a mine are "material," if not "fixtures or machinery," within the meaning of Code Ala. 1886, § 3018, giving a lien for "any material, fixtures, engine, boiler, or machinery" furnished for any building or improvement on land.

On Exceptions to the Master's Report.

Suit by the Central Trust Company of New York against the Sheffield & Birmingham Coal, Iron & Railway Company, and others.    Intervention of the Watt Mining Car-Wheel Company.

*Roquemore, White & McKenzie,* for intervenor.

*H. B. Tompkins* and *Lawrence Cooper,* for defendants.

PARDEE, J.  The intervenor came into this court to have recognized and enforced a lien claimed on a certain coal mine, and on the machinery, equipment, and fixtures therein, especially on 240 coal-cars, all of which is in the custody of this court.  Under a specific contract, the intervenor furnished to the owners of the mine cars specifically adapted for use in the mine; and for the furnishing and equipment thereof—

"It is agreed that said cars are now in use in said mine as a part of the equipment thereof, and are used to haul coal from where it is mined to the opening or mouth of the mine, upon an iron track; and they are propelled or drawn by machinery at the mouth of the mine, or pushed by hand, or drawn by mules, and are not adapted to any other use or transportation, or used in any other manner."

The case shows that the laws of the state of Alabama with regard to recording a lien were complied with.  In short, the joint answer of the complainant, defendant, and the receiver, to the intervention, admits the entire case as claimed for the intervenor except as to the lien.  The intervention was referred to a special master to report upon the amount due, and as to the character and extent of intervenor's lien.  The master has reported against the intervenor on the question of lien on the ground that a coal mine is not a building or improvement, within the meaning of section 3018, Code Ala. 1886.  As a further reason for his report, the master doubts if the cars are such "material," "fixtures," or "machinery" as come within the purview of the said statute.  Intervenor's lien is claimed under section 3018, Code Ala. 1886, as follows:

"Every mechanic or other person who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler, or machinery for, any building or improvement on land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor, or sub-contractor, upon complying with the provision of this chapter shall have a lien therefor on such building or improvement, and on the land on which the same is situated," etc.

The first question presented is whether or not the coal mine, as set forth and described in the intervention and exhibits, is such an improvement upon land as comes within the meaning of the statute just quoted; it being contended on one side that the word "improvement" in the statute must be limited in its meaning to buildings and things *ejusdem generis;* in other words, that an improvement upon land which is not in the nature of a building is not an improvement within the meaning of the statute.  On the other hand, it is claimed that, in the proper construction of the statute, the word "improvement" is not at all limited by the word "building" preceding it, but that it is to be taken as extending the class of constructions which may be the subject of a lien, rather than limiting such class.  It is said that this point has never been settled by the jurisprudence of the state of Alabama, and is to that extent a new question.  The question was before the supreme court of the state in the case of *Iron-Works* v. *Dorman*, 78 Ala. 218, but was not passed upon; the lien being defeated for failure in description of land subject to lien.  An examination of the legislation and jurisprudence of the state with

reference to this mattar of liens will, however, decidedly aid in reaching a correct decision. Section 3101 of the Code of 1867 provides as follows:

"Mechanics and builders have a prior lien upon the tract, parcel, or lot of land on which buildings are erected by them, and on the buildings so erected, for the price agreed on, or compensation to be paid, and materials used in the construction thereof, unless surety be given to such builders for the performance of the contract, or an agreement be made, in writing, waiving the lien."

In 1873, (Acts Ala. 1872–73, p. 117,) the said section 3101 of the Code of 1867 was amended so as to read as follows:

"Mechanics and builders have a prior lien upon the tract, parcel, or lot of land on which buildings, inclosures, or fixtures are erected by them, and on the buildings, inclosures, or fixtures for the price. agreed upon, or compensation to be paid, and materials used in the construction thereof, unless there be an agreement in writing waiving the lien," etc.

This act extended the cause of the lien from "buildings" to "buildings, inclosures, or fixtures," and the subject of the lien from "land" and "buildings" to "land," "buildings, inclosures, or fixtures." In 1876, three years later the law was again amended so as to read as follows:

"Every mechanic or other person who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler, or machinery for, any building, erection, or improvement upon land, or for repairing the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor, or subcontractor, upon complying with the provisions of this chapter shall have, for his work or labor done, or materials, fixtures, engine, boiler, or machinery furnished, a lien, to the extent and in the manner by this chapter provided, upon such building, erection, or improvements and upon the land belonging to such owner or proprietor, on which the same are situated, to the extent of one acre," etc. Section 3440, Code Ala. 1876.

This act extended the subject of the lien from "land," "buildings, inclosures, or fixtures" to "land," "building, erection, or improvement." The next change that seems to have been made in the law is made by section 3018 of the Code of 1886, *supra*, in which the statute last quoted is amended by striking out the word "erection," so that the statute reads, "for any building or improvement on land," and by further striking out the words, "for his work or labor done, or materials, fixtures, engine, boiler, or machinery furnished," in that part of the section describing extent of the lien, so as to read, "shall have a lien," etc. The changes made at this time were in codifying, and do not appear to materially enlarge or restrict the scope and effect of the act of 1876. In the case *Ex parte Schmidt*, 62 Ala. 252, the supreme court of the state of Alabama, in considering the proper construction of the mechanic's lien under the Code of 1876, said:

"Our present statutory system, defining and declaring liens of mechanics, employes, and material-men for buildings, erections, or improvements upon lands, or for repairing the same, are of recent enactment, and their construction, in the main, remains to be settled. Such liens were unknown to the common law, and hence are purely of statutory creation. They are to be construed as other statutes introductive of a new policy are construed; and, while it is not permissible, under the guise of interpretation, to extend the provisions of the

enactments to cases not provided for, it is equally unjust and unauthorized to emasculate the statutes by a narrow or strict construction of their beneficial provisions.   Their general policy was and is to secure to the artisan and laborer the just reward of his labor, and the lien conferred is somewhat analogous in its aims to the equitable lien of a vendor for unpaid purchase money of land sold.   It is inequitable, says the law, that one shall enjoy another's lands and not pay the promised price.   So the policy of the statute we are considering declares that it is inequitable that one shall enjoy another's goods, or the products of his labor and skill, without making just compensation therefor.   The same reason which upholds the policy of the one vindicates the justice of the other.   Our legislative policy for the last thirty years, and the overthrow of private fortunes consequent upon our late civil war, have had the effect to place much of the property of the country in fiduciary hands; and the beneficiaries of many estates, while they could and did enjoy the products of their property, were left without power to fasten a charge upon it by any contract of theirs.   This, in many instances, worked great hardship and inflicted grievous wrong; and our very liberal exemption statutes, in the absence of a special waiver, have placed the entire property of much the larger part of our population beyond the reach of legal process.   The manifest and deplored result of all this has been that the honest toil of the laborer, and the merchandise of the material-man, have often been appropriated by a faithlessness in some cases highly culpable.   These considerations, no doubt, influenced the legislature in declaring the very liberal and comprehensive system of liens now found upon our statute-book.   It is our duty, in construing these statutes, to give to the language its natural import and scope, and thus carry into effect the intention of the legislature as far as it can be gathered from the language employed."

If the changes made in the statute from 1867 to 1886 are considered, and the statute itself is considered and construed in the light of the decision of the supreme court, just quoted, it seems clear that the lien granted is not to be restricted to material, etc., furnished for any building or improvement of the same kind and nature as a building upon land, but rather that the words "building or improvement," in the law, are used independently, and as having a different meaning; and, if not independent of each other, then that the word "improvement" is of the greater significance, and has the larger meaning; otherwise the act of 1876 is useless, for the act of 1873, under the description of inclosures and fixtures, included improvements that were of the same kind and nature as buildings.   The decision in *Ex parte Schmidt, supra,* is in harmony with *Copeland* v. *Kehoe,* by the same court, reported in 67 Ala. 594, which latter case is cited by the master as favoring a strict construction of the statute.   Neither case proposes to go outside the language of the statute to find its meaning, but the former case does make use of the light furnished by the current history of the state to show the meaning of the words used in the statute, which is no more going outside the statute than would be a resort to a dictionary.   Statutes like the one in hand are in derogation of the common law, and courts have been inclined to construe them strictly; but the better opinion now is that these statutes are highly remedial, and should be construed so as to carry out the objects in view.   See *Ex parte Schmidt, supra; De Witt* v. *Smith,* 63 Mo. 263; *Taggard* v. *Buckmore,* 42 Me. 77; *Buchanan* v. *Smith,*

43 Miss. 90; *Weathersby* v. *Sinclair*, Id. 189; *Putnam* v. *Ross*, 46 Mo. 337; *Bullock* v. *Horn*, 44 Ohio St. 420, 7 N. E. Rep. 737. At the time the act of 1876 was passed the state of Alabama was known to have immense mineral resources awaiting development, and wanting capital therefor. Mechanics' liens were restricted to buildings and things *ejusdem generis*. The new law, in terms, extended the lien to all improvements on land. If this word "improvement" is given its ordinary meaning, the new law is extended to cover the construction of coal and iron mines; and thereby great help is given to the owners of mineral lands to develop their property, and such development increases the general prosperity of the state. There was no reason why capital and labor put into the coal and iron industries should not be encouraged and protected as well as in other works and improvements. A going coal mine is not merely a hole in the ground. It is made up of shafts, drifts, slopes, engines, machinery, platforms, cars, tracks, scales, etc.; and, taken as a thing, if not a building, it is unquestionably an improvement, and an improvement on land. Taking into consideration the importance and condition of the mines and mining interests of the state in 1876, it is a fair presumption that the legislative intention in the act of 1876 was mainly to extend the lien of mechanics and material-men for work and material so as to aid in the development of the state's mineral resources. However this may be, it clearly appears to me that the coal mine described in the intervention and exhibits is an improvement, within the meaning of the terms used in section 3018 of the Alabama Code, and that for material, fixtures, engine, boiler, or machinery furnished therefor, a lien results to material-men on compliance with the requirements of the statute.

The question remains as to whether the coal-cars, as furnished under the contract by intervenor, are "material," "fixtures," or "machinery," within the meaning of said section 3018. There is good authority at the present day for holding rolling stock of a railroad to be, in a general sense, "fixtures." See brief of *Matt Carpenter*, 2 Wall. 647, note. And many cases to that effect may be cited where the question arose generally under mortgages. In Alabama the question is not decided. Whether the coal-cars in this case can be considered machinery, as they have no motive power, and "are propelled by machinery, or pushed by hand, or drawn by mules," query? "Machine. A contrivance which serves to apply or regulate moving power; or, it is a tool, more or less complicated, which is used to render useful natural instruments." Bouv. Law Dict. "The term machine includes every mechanical device, or combination of mechanical powers and devices, to perform some function and produce a certain effect or result." *Piper* v. *Brown*, 4 Fish. Pat. Cas. 175. Material, however, is a word of such general import that I see no difficulty in making it cover the cars in question. "Material includes everything of which anything is made." See Bouv. Law Dict.

It is a conceded fact in this case that the contract with intervenor stipulated that the coal-cars were to be furnished for the equipment of the particular mine, and were used for that purpose. As the mine ready for operation is an improvement on land, and the coal-cars are a neces-

sary part of the mine, considered as an entirety, the coal-cars were material for the improvement, and within the statute. The intervenor should have judgment recognizing its lien as prayed for. The master's report should be reformed and amended so as to conform to the views herein expressed, and, as so amended, should be approved and confirmed; and an order to that effect will be entered.