# Copeland *v.* Kehoe & Ramsey.

### Bill in Equity to Enforce Mechanic's Lien.

1. *Effect of recording a conveyance upon contracts made prior to the registration, and subsequent to the execution of the conveyance.*—A conveyance recorded within the three months allowed by statute for its registration, has relation to, and takes effect from the day of its execution.

2. *Mechanic's or builder's lien law ; how construed.*—A builder or mechanic's lien is purely statutory. Its character, operation, and extent must be ascertained by the terms of the statute creating and defining it, and the courts cannot extend the statute to meet facts and circumstances for which the statute itself does not provide, but which the courts think of equal merit with those provided for by the statute.

3. *Act approved April 19th, 1873 ; construction.*—The statute, by its own terms, limited the lien to the title or estate of the party contracting for the improvements.

4. *Same ; when lien is created by.*—The lien created by the statute being an incident to an express contract, it follows of necessity, where there is no valid contract, there is no lien.

5. *When husband contracts on his own responsibility for improvements on his wife's estate.*—When the husband, on his own responsibility, contracts for the improvement of his wife's estate, mere silence or failure on her part to dissent from the contract, cannot be construed as an intention to bind her estate in payment.

APPEAL from Barbour Chancery Court.

Heard before Hon. NEIL S. GRAHAM.

In 1873 Kehoe & Ramsey contracted, in writing, with William P. Copeland to build the brick work of a warehouse in Eufaula. The work was completed by Kehoe & Ramsey, and approved by Copeland, but the latter failed to pay the entire amount due on the work. The bill was filed to compel an account between Copeland and Kehoe & Ramsey, and to enforce the latter's lien upon the property by a sale. The answer of Copeland averred ownership in his wife, and admitted the fact of a balance being due complainants. In October, 1874, complainants filed an amended bill averring that, on the 27th day of August, 1873, at the time they entered into the contract for the repairs with Copeland, they did not know that said Copeland had conveyed to his wife the lot upon which the brick structure was to be erected, as the deed was not recorded for some time after the contract

was made, and the consideration of said deed was for love and affection, and the further consideration of the amount of money belonging to her separate estate, which the said Copeland intended to use in constructing said brick work ; that said Mary Copeland frequently saw the work progressing, but never objected to its completion. An additional amended bill was filed, which alleged fraud in the conveyance from Copeland to his wife. The answers of said Copeland, and of his wife, went severally to show that the property was a part of the statutory separate estate of Mrs. Copeland, and that Wm. P. Copeland was acting on his own individual authority in contracting for the work done by complainants. On a final hearing, the Chancellor granted the relief sought by complainants at the April term, 1878. The decree is assigned as error.

A. H. MERRILL, for appellants.

G. L. COMER, contra.

BRICKELL, C. J.—This cause was before this court, at the December term, 1876, and it is reported in 57 Ala. 246. It was then declared the conveyance to Mrs. Copeland by her husband in satisfaction of his conversions of money, her statutory separate estate, was founded on a valuable consideration, and was not violative of the statutory provision, that " husband and wife cannot contract with each other for the sale of any property." It was also said, if by operation of that conveyance, the premises became of the corpus of the statutory separate estate of the wife, it could not be charged with the payment of any other debt, than such as was contracted for articles of comfort and support of the household. Or, if the operation of the conveyance was to create an equitable separate estate, the premises could not be charged with the debt to the appellees upon the evidence found in the record, because it was contracted by her husband on his own credit, and not by her, or with her authority. It was further said, if the deed was fraudulent—if its purpose was to hinder, delay, or defraud the creditors of the husband, it could not be supported.

The bill has since been amended by the introduction of allegations that the recital of consideration in the conveyance was feigned and false, and that there was for it no valuable consideration ; that at the time of its execution the grantor was insolvent, and made the conveyance in contemplation of contracting the debt with the appellees, and avoiding its payment ; and that in fact the conveyance was not delivered

[Copeland v. Kehoe & Ramsey.]

to the grantee until after the contract for building the store-house had been made with the appellees. These allegations are denied by the answers, and we are of the opinion, disproved by the evidence.

The case is reduced to a single inquiry—whether the appellees have a statutory mechanic's or builder's lien which can be enforced against the premises. The statute of force creating and declaring a mechanic's and builder's lien, when the contract for building the store house was made, was the act approved April 19, 1873, amendatory of sections 3101, 3102, 3104, of the Revised Code of 1867. The first section in general terms declared a prior lien upon the tract, parcel or lot of land on which buildings, inclosures, or fixtures were erected, and on the buildings, inclosures, or fixtures for the price agreed upon, or compensation to be paid, and materials used in the construction thereof, unless the lien was waived by agreement in writing. The second section declared the lien was effectual against the title of the party contracting for the building, whether it was legal or equitable, a freehold or less estate. The third section required for the preservation of the lien, the commencement of an action at law, or a suit in equity for its enforcement, within twelve months after the completion of the work, or supply of materials.—Pamph. Acts 1872-3, p. 117.

The first proposition urged by the appellees in support of the lien is, that the contract under which it originates, and from which it is derived, though made subsequent to the conveyance to Mrs. Copeland, was made prior to its registration, when they had no notice of the conveyance, were without knowledge of any fact, which would put them on inquiry, and without means of ascertaining its existence. If we were to concede the appellees stood in the relation of purchasers, having a lien from the time of the contract, and not solely from the time the work was commenced, the conveyance having been delivered into the office of the probate judge, for registration, within three months from its execution, would prevail over the lien. The statute (Code 1876, § 2166), prescribes three months from this date, as the period within which conveyances of unconditional estates, mortgages, &c., must be recorded, to preserve their priority over subsequent conveyances, or liens. A conveyance recorded within that period has relation to, and takes effect from the day of its execution.—4 Kent, 532; Wade on Law of Notice, §§ 102, 225; *Claiborne v. Holmes*, 51 Miss. 146.

The next proposition relied upon, is, that Mrs. Copeland had knowledge of the contract under which the store house was being built, suffered the building to proceed without as-

serting any claim to the premises; without communicating to the appellees the fact that title resided in her; and has since taken and enjoyed all the benefits which are derived from the improvements, and should not now be permitted to deny the claim of appellees to a lien for compensation for their labor and materials. A builder's or mechanic's lien is purely statutory. Its character, operation and extent must be ascertained by the terms of the statute creating and defining it. Of itself, it is a peculiar, particular, special remedy given by statute, founded and circumscribed by the terms of its creation, and the courts are powerless to take it up where the statute may leave it, and extend it to meet facts and circumstances, which they may believe present a case of equal merit, or a necessity of the same kind, as the cases or necessities for which the statute provides.

The statute of force when the present contract was made, obviously contemplated the lien should exist only where there was an express, as distinguished from an implied contract, under which the work was done, or the materials furnished. It is a *lien for the price agreed upon, or compensation to be paid,* the statute declared. The statute by its own terms limited the lien to the title or estate of the party contracting for the improvements. The land itself, or the improvements, without regard to the ownership, is not subjected to the lien. If it had been, the owner, by the mere act of a stranger, could have been improved out of his estate. The contract for the building in this case was in writing, made by the husband alone, upon his own credit and responsibility, not as the agent or trustee of his wife. Indeed, the appellees were contracting in ignorance of the wife's title, and in ignorance completed the work. This ignorance they now claim was superinduced by the *laches* of the wife. If the premises are to be taken and deemed the statutory separate estate of the wife, it must be borne in mind, that as to such estate, she is not a *feme sole.* While her capacity to take and hold property is enlarged by the statutes, her power of administration, and her capacity to contract, as known and defined at common law, are not enlarged, save for the purposes of alienating, by sale, the estate, and the alienation must be in writing, the joint act of herself and of her husband, attested by two witnesses, or acknowledged before a proper officer.—*Pickens v. Oliver,* 29 Ala. 528; *Alexander v. Saulsbury,* 37 Ala. 375. Estoppels *in pais* can not be raised against her in reference to the statutory estate.—*Canty v. Sanderford,* 37 Ala. 91; *Warfield v. Ravisies,* 38 Ala. 518; *Walls v. Grigsby,* 42 Ala. 473. It was an inflexible rule of the common law, that a *feme covert* could not bind herself by an executory contract. All

her executory contracts were void absolutely, not voidable merely. In view of the construction, judicial decision has fastened upon the statutes which create and define the separate estate of a married woman, this rule of the common law has undergone no material change or modification. A liability is by the statute fixed upon the estate for articles of comfort and support of the household. But not because the liability springs from any contract made by or with the wife. It is unimportant whether the wife or the husband is the agent through and by whom the contract is made; the liability springs from the consideration of the contract, and not the agency through which it may be made.—*Durden v. McWilliams*, 31 Ala. 442; *Bender v. Meyer*, 55 Ala. 576; *Mitchell v. Dillard*, 57 Ala. 317. The lien created by the statute being an incident to an express contract, it follows of necessity, where there is no valid contract there is no lien.—*Kerby v. Tead*, 13 Metc. 149; *Rogers v. Phillips*, 8 Ark. (3 Eng.) 366; *Silley v. Casey*, 6 Mo. 166; *Fetter v. Wilson*, 12 B. Mon. 90.

But, suppose we regard the premises as the equitable separate estate of the wife, as to which a court of equity treats her as *sui juris*, having as full capacity to bind it as if she were a *feme sole*, not being restrained or limited by the instrument creating it. It is her own contracts, her own acts, which will bind the estate, and not the acts or contracts of her husband. If she, in her own name, or if her husband, having authority from her, as her agent, had entered into this contract, treating the premises as her statutory estate, it may be conceded the statute would have created a lien, the appellees could have enforced. The contract was not made by, or for her; any intendment, or implication, or inference, that in making it, the husband was acting for her, or that the appellees intended to contract with her, is excluded by the terms of the contract, and all the attendant circumstances. All that can be imputed to the wife, is knowledge that the building was being constructed under the contract her husband had made personally, and upon his own credit and responsibility. It would be a harsh rule, that would imply from her mere silence in reference to her title, or from her failure to dissent from the contract of her husband an approval of it, and an intention to bind her estate for the payment of the compensation he had promised. Her estate, under the operation of such a rule, would be restored to the common law dominion of the husband, from which it is the very purpose of the instrument creating the estate, to disembarrass, relieve and free it. The case, as it is presented, is wanting in every element of an affirmative contract by the wife, or of facts which are sufficient to imply a contract by

[Nettles v. Nettles.]

her, if the statutory lien was capable of extension to an implied contract.—*Fetter v. Wilson*, 12 B. Monroe, 90 ; *Sawer v. Bandow*, 43 Wise, 556 ; *Hughes v. Peters*, 1 Cald. (Tenn.) 67 ; *Bliss v. Patton*, 5 R. I. 476.

The lien, as we have said, is effectual and capable of enforcement only against the estate of the contractor or employer. Whether the premises are the statutory or equitable separate estate of the wife, the husband had no estate or interest liable for the payment of his debts, or on which a lien could be created. Under the present statute (Code of 1876, § 3440), a married woman may contract for improvements on her real estate, and subject it to a mechanic's lien. *Ex parte Schmidt*, 62 Ala. 252 ; *Schmidt v. Joseph*, MSS.

The decree is reversed, and a decree must be here rendered dismissing the bill at the costs of the appellees in this court, and in the Court of Chancery.