ST. PETER'S CATHOLIC CHURCH, POINT PLEASANT,
NEW JERSEY,

*v.*

JAMES M. VANNOTE et al.

[Filed February 2d, 1904.]

1. Where a building contract, giving the owners the right to complete the work on abandonment by the contractor, is abandoned by the contractor after the work is partially done, and the building is completed by his sureties under agreement with the owners, the work done by the sureties is neither for the owners nor the contractor, but to relieve themselves as cheaply as possible under their obligation as sureties.

2. The sureties are entitled to the unpaid portion of the contract price, including, as far as necessary to reimburse them for their necessary

St. Peter's Catholic Church v. Vannote.

outlay, an indemnity fund retained by the owners as the work progresses, for their security in the contingency that the work should be abandoned, and they should be required to complete it themselves.

3. The right of the sureties is superior to the claims of materialmen and laborers for work done for, and material furnished to, the contractor, as to the indemnity fund in the hands of the owners, which they retained pursuant to the terms of the contract, to be used by them in the contingency that the contractor should not complete the work.

4. The claims of materialmen and laborers having claims against the contractor reach only such moneys as were due at the time of the several demands and notices, or thereafter becoming due to the contractor.

5. The amount of the contract price recoverable by the sureties includes claims for labor done and material furnished after the contractor had abandoned the work, while the sureties were completing it.

6. Sureties on a contractor's bond who, with the permission of the owner, had finished a house abandoned by the contractor, are entitled to be repaid out of the moneys which thus became due upon the contract in preference to materialmen and laborers who had served notices upon the owner when there was still nothing due and unpaid. This applies to a percentage of the contract price retained by the owner as indemnity till completion of the building.

---

On bill of interpleader, filed by the complainant, who owed a portion of the contract price for building a church, against which portion retainers have been filed by laborers and materialmen.

*Mr. Peter Backes,* for the complainant.

*Mr. Frank S. Katzenbach, Jr.,* for William P. Taylor and James M. Vannote.

*Messrs. Parker & Pearce (Mr. Parker),* for Andrew F. Vannote.

*Mr. Frank Durand,* for Clark Newman.

*Mr. Edwin P. Longstreet,* for J. M. Vannote & Son.

*Mr. Thomas C. Curtis,* for Z. P. Vannote, John H. Reid, Morriss Brothers and George A. Newbury.

*Mr. William J. Backes,* for Joseph Backes, George W. Carll, Henry D. Dagitt, Dennis McElhenny and William L. Brown.

*Mr. Edmund Wilson* (represented by *Mr. Warren H. Smock*), for Sayre & Fisher Co.

*Mr. Clarence H. Murphy,* for George C. Newbury.

REED, V. C.

On May 20th, 1901, there was filed in the clerk's office of Ocean county a contract between St. Peter's Catholic Church, Point Pleasant, New Jersey, and Newbury & Son. By the terms of this contract G. A. Newbury and W. T. Newbury, trading as Newbury & Son, for the sum of $12,800, were, to the satisfaction of an architect, acting as agent of the owner, to perform all the work and provide all materials mentioned in the specifications annexed to the contract for the erection of a church. The price was to be paid in monthly installments upon the certificate of the architect of the value of the work and materials actually and permanently set in the building less twenty per cent., held as a reserve until final payment. The building was to be completed by August 15th, 1901, and it was agreed that at any time it might be determined by the architect to give notice that the work was not being prosecuted with proper dispatch, and thereafter the owner might finish the work and provide materials at the expense of the contractors. A bond was to be given by the contractors to the owners in the sum of $7,000, conditioned for the faithful performance of the contract. On May 18th, 1901, a bond was so given, conditioned to save the owners from all loss arising from the failure of the contractors, or sub-contractors, to finish the work provided for in the contract and to save the owner harmless from all liens which might or could be filed against the premises. The sureties upon this bond were James M. Vannote and William P. Taylor.

Newbury & Son began the work of construction and continued it until about January 1st, 1902, when they abandoned the work. On January 25th, 1902, the architect, Henry D. Dagitt, notified

St. Peter's Catholic Church v. Vannote.

the sureties, that as the contractors had failed to comply with the terms of the contract, that he, the architect, would, at the request of the sureties, permit them to complete the work, provided the present sub-contractors were permitted to carry out their contracts, and that new bids be taken for the finishing and carpenter work, which must be submitted to him (the architect) for approval. At the time when the contractors abandoned the work there had been paid to them upon the architect's certificate of the value of work and materials actually and permanently set in the building the sum of $8,939.44, and there had been retained, as the twenty per cent. of the amount certified, the sum of $2,234.80. The balance of the contractors' price therefore amounted to $1,632. Vannote and Taylor, the sureties upon the contractors' bond, finished the building at an expense of over $3,200. Demands were made upon the contractors and notices given to the owners by claimants, whose claims amounted to $2,323.05. In addition to these claims there were also notices given to the owner, of demands made against Vannote and Taylor for work done and materials furnished to them in the completion of the building, which claims amounted to $747.23.

The first question respects the relative priority of the claims of the sureties upon the unpaid portion of the contract price and the claims of those who furnished labor and material to the contractors before their abandonment of the contract. The sureties insist that they finished the building for the owner, and are entitled to stand in the same posture that the owner would have occupied, had it been compelled to complete the building.

It is assumed by all the parties that if, after the abandonment of the work by the contractors, the owner had completed it, it would have been entitled to retain the reasonable cost of the work from the unpaid portion of the contract price. It is insisted for the sureties that, inasmuch as they did the work in the stead of the owner, such portion as the owner would have been entitled to retain should be turned over to them.

The testimony does not prove that the sureties completed the work as the agents of the owner in the sense that the owner

became bound by their contracts and responsible for the debts incurred in the work of completion. It does, however, show that, through the architect, the owner consented to the completion of the building by the sureties. Their purpose in undertaking the completion of the building instead of the owner is obvious. They, as sureties, were bound to see that the building was completed, and they were concerned to have it done in the most economical manner. To effect that purpose they wished to have the control of the work. The sureties did the work, not for the contractors, nor for the owner, but to relieve themselves, as cheaply as possible, from their obligation to the owner. What they did was by virtue of their contract with the owner. Their obligation as sureties was to the owner; they owed no debt to the contractors. What they did was not for the contractors. Nor can the contractors claim any portion of the contract price by reason of what the sureties did. The notices and demands of the materialmen and laborers never reached the $1,632, being the uncertified amount of the contract price, and the sureties are entitled to this sum. *McChesney* v. *City of Syracuse, 75 Hun 503; City of St. Louis* v. *O'Neil Lumber Co., 42 Mo. App. 588; S. C. on appeal, 114 Mo. 74.*

But as already observed, the sureties spent about twice this amount in finishing the building. The undisputed bills paid by them amount to $3,258.70. The query is whether the remainder of these claims, after deducting the $1,632, should be paid out of the $2,234.80, being the twenty per cent. withheld under the contract until the completion of the building.

Had the owners completed the contract, they would have been entitled to deduct the cost of completion from the contract price due to the contractors at the time of their abandoning the work, including the amount retained under conditions like the present. *Kelly* v. *Bloomingdale, 139 N. Y. 343.* Now, the twenty per cent. was retained as indemnity against failure by the contractors to entirely execute the contract. As against the sureties, the owner was bound to so retain it, else he would have *pro tanto* discharged the sureties from their obligations to answer the default of the contractors. *Phil. Mech. L. 260.* The sureties

St. Peter's Catholic Church *v.* Vannote.

could have compelled the owner, if its use became necessary, to devote all, or a portion, of this money to complete the building before resorting to their bond. Instead, they themselves performed the duty and discharged the obligation which the contracts put upon the contractors. By this conduct the sureties became entitled to the security held by the owner for the performance of the contract as far as it was necessary to reimburse them for their necessary outlay. *Philadelphia & Reading Railroad Co.* v. *Little, 14 Stew. Eq. 519, 529.*

This right of the sureties, so far as it concerns the owner and contractors, is clear. I also think that the right of the sureties is superior to the claims of the materialmen and laborers. The claims of the latter reach only such moneys as was due at the time of the several demands and notices or thereafter became due to the contractors. Nothing, aside from what was already paid, became due unless the theory is adopted that the sureties were working for the contractors and therefore, upon the completion of the building by them, a debt accrued to the contractors as if they had completed the work. But, as already observed, the sureties were not working for the contractors. There was no privity between them and the contractors. Their contract was with the owner as sureties for the default of the contractors. By the mere fact of performance of their contract they became equitable assignees of so much of the money held by the owner as was required to requite them for their expenditure.

I am therefore of the opinion that the sureties are entitled to be reimbursed for their necessary expenses in completing the contract out of the entire amount of the contract price remaining unpaid.

In excess of the $3,258.70 there were demands made upon the sureties and notices of their refusal to pay them given to the church by claimants for labor done and material furnished after the contractors had abandoned the work and while the sureties were completing it.

The validity of these claims become important in ascertaining whether the sureties became liable to pay these debts for work

and labor done in the completion of the building, and so whether the amount to which they are entitled becomes enlarged by the amount of these claims. The claims of McElhenny and Brown, who seem to have been employed by Peacock, the carpenters working for the sureties, I think, should be allowed.

I think, also, Mr. Dagitt's claim for $64.69 for work done by Martin Moses by arrangement with the sureties, and his claim for $231.22 for window sash furnished under agreement with the sureties, and for $25 for labor employed in keeping up fires, should be allowed. The remainder of Mr. Dagitt's claim for extra services should be disallowed, as, in my judgment, they were not debts incurred by the sureties.

If there is any balance remaining after the payment of these claims it should be distributed, first, to A. F. Vannote and next to James M. Vannote & Sons. A consideration of the validity or priority of the subsequently filed claims would be useless as, in my view of the situation, there could be no fund to pay them in any event.