**DAVID LUPTON'S SONS CONST. CO. et al.**
**v. HUGGER BROS. CONST. CO. et al.**

3 Div. 31.

Supreme Court of Alabama.

March 16, 1933.

Rehearing Denied May 25, 1933.

Ball & Ball, of Montgomery, for appellants.

John Goodwyn and Hill, Hill, Whiting, Thomas & Rives, all of Montgomery, for appellees.

BROWN, Justice.

This appeal is from an interlocutory decree sustaining the defendants' demurrers to the bill, and in determining the soundness of that ruling this court will look to the case as made by the pleadings.

The bill is filed by materialmen to enforce their statutory liens for materials furnished to Hugger Bros. Construction Company and used in the construction of a building on a lot or parcel of land located on Catoma street in the city of Montgomery.

The bill, taking its averments with the exhibits thereto, alleges that said Hugger Bros. Construction Company on June 30, 1930, entered into a contract with the owners of said lot, the respondents Blue and Boswell, to provide all the material and perform all the work "for the erection and completion of a two story brick business building" on said lot "as shown on the drawings and described in the specifications prepared by Okel & Cooper, Architect, which drawings and specifications are identified by the signatures of the parties" thereto and made a part of the contract, for the sum of $18,991.85, to be paid by the owners to the contractor "in current funds, and only upon certificates of the architect * * * on or about the 1st and 15th of each month. No partial payment, except the final to exceed 90% of the value of labor and material to date of such payment."

The contract stipulated that "the final payment shall be made within six days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued. If at any time there shall be evidence of any lien or claim for which, if established, the owners of the said premises might become liable, and which is chargeable to the contractors, the owners shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify them against such lien or claim. Should there prove to be any such claim after all payments are made, the contractors shall refund to the owners all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractors' default."

It is further stipulated that, "should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architect, the owners shall be at liberty, after three days written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor

under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the owners shall also be at liberty to terminate the employment of the contractors for the said work and to enter the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractors they shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owners in finishing the work, such excess shall be paid by the owners to the contractors; but if such expense shall exceed such unpaid balance, the contractors shall pay the difference to the owners. The expense incurred by the owners as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

Contemporaneously with the execution of the contract, the contractor entered into a "Contract Bond" with the Southern Surety Company, as surety, "in the full and just sum of" $18,991.85, payable to the owners "to the payment of which well and truly to be made the principal and surety hereby bind themselves, their heirs, executors, administrators, successors and assigns, *jointly and severally,* firmly by these presents," which, after stating the substance of the contract between the owners and the contractor, proceeds:

"Now, therefore, The condition of the above obligation is such that if the principal shall faithfully perform said contract, according to the terms, covenants and conditions thereof, then this obligation shall be void, otherwise of full force and effect, subject however to the following express conditions, the performance of each of which shall be a condition precedent to recovery hereunder.

"1. That the obligee shall keep, do and perform each and every, all and singular the matters and things set forth and specified in said contract to be by the obligee kept, done and performed, at the times and in the manner provided in said contract.

"2. That if the principal shall abandon said contract or for any cause cease operations thereunder or the performance thereof or shall be declared in default under the terms of said contract, the surety shall have the right, at its option *to complete said contract* or *to sub-let the completion thereof;* and if the surety elect to sub-let or complete

said contract, all moneys due or to become due under said contract, including all unpaid installments and all percentages or reserves agreed by the terms of said contract to be withheld until completion, shall, as the same become due and payable under the terms of said contract, be paid to the surety, regardless of any assignment or transfer thereof by the principal, and the surety shall be entitled to said moneys or payments in preference to any assignee or any other adverse claimants, whatsoever; but if the obligee completes or re-lets said contract, after the surety has elected to not complete or sub-let, all reserves, retentions, deferred and other payments which under said contract would have been payable to the principal if the principal had duly performed said contract, shall be credited upon any claim against the surety, and no forfeiture provided in said contract against the principal shall be operative against the surety."

"6. That no right of action shall accrue upon or by reason hereof to or for the use or benefit of anyone other than the obligee herein named; that this obligation is and shall be construed strictly as one of suretyship only, shall be executed by the principal before delivery, and shall not nor shall any interest herein or right of action hereon be assigned without the prior consent in writing of the surety." (Italics supplied.)

The contractor, Hugger Bros. Construction Company, on August 29, 1930, before completing the building, abandoned the contract, leaving in the hands of the owners, Blue and Boswell, $8,625.42 of the contract price, and the surety was notified of the abandonment by the principal, and it elected to complete the building according to the original plans and specifications, and proceeded with the work in accordance with the contract, and the owners paid to the surety $8,532.56 of the balance, leaving on their hands only $92.86.

After the contractor—the principal on the bond—abandoned the contract, but before full performance of the original contract between the owners and Hugger Bros., by the surety, the complainants, on September 30, 1930, filed their claim of liens in the office of the judge of probate of Montgomery county, and notified the owners in writing that they claimed liens on the unpaid balance and on the property for the amount of their respective claims for materials furnished to said contractor.

■■ The appellees concede, and correctly so, that the building contract and the bond constitute the contract between the owners, the contractor and the surety for the construction of the building, and complainants, in furnishing materials to the contractor, "must take notice of the terms and character of the contract between the owner and the original contractor, and after notice the contract cannot be changed to the prejudice of

any one having a legal interest in it, owner, original contractor * * * or material-man." Cranford Mercantile Co. v. Wells et al., 195 Ala. 251, 255, 70 So. 666, 668.

And under the terms of the contract the owners had the right to take charge of the work and expend so much of the balance remaining in their hands as was necessary in the completion of the building, and, if the entire balance was consumed, there was nothing to which the statutory liens, provided for by section 8832 of the Code, could attach, and the materialmen must look to the contractor alone for their pay. Cranford Mercantile Co. v. Wells et al., supra.

The further contention of the appellees is that the surety, in proceeding with the work under the contract to discharge its liability to the owners, to so speak of its rights under the contract, stands in the shoes of the owners, and with like result. In support of this contention the case of St. Peter's Catholic Church v. Vannote et al., 66 N. J. Eq. 78, 56 A. 1037, is cited. The opinion of the court in that case, though this is not clear, seems to be based on the fact that the sureties did not proceed to the completion of the work under the original contract, but, in consideration of their liability, entered into a new contract with the owner, the owner acting through the architect, to complete the work, with the condition that "the present subcontractors were permitted to carry out their contracts, and that new bids be taken for the finishing and carpenter work, which must be submitted to him (the architect) for approval," and by this arrangement a novation or new contract resulted. This was the effect accorded that case by the text of 40 C. J. p. 308, § 405.

However, if that case holds that a surety of the contractor, who, jointly and severally with its principal, undertakes to hold the owner harmless from pecuniary liability resulting from a breach of the contract by which the contractor engaged to furnish all the labor and material for the completed construction of a building, and who, upon default of the principal, performs the contract, is entitled as against lienors for material and labor furnished to the contractor, to receive the balance due on the contract, we decline to follow it for the reason that such holding would in effect nullify the statute, which secures to the "employees of the contractor or persons furnishing material to him" a lien on the property to the extent of the unpaid balance due the contractor and on such unpaid balance. Code 1923, § 8832; Alabama & Georgia Lumber Co. v. Tisdale, et al., 139 Ala. 250, 36 So. 618; McDonald Stone Co. v. Stern & Marx et al., 142 Ala. 506, 38 So. 643.

The lien springs from the statute, and in respect to subcontractors, mechanics, laborers, and materialmen, who have no direct contractual relations with the owner of the property improved, it operates somewhat in the nature of an attachment or garnishment of the fund in the owner's hands, with the property as security therefor. Lonergan et al. v. San Antonio Trust Company, 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803; 18 R. C. L. page 872, § 1.

The general policy of the statute is to secure to the materialman, as well as to "the artisan and laborer the just reward of his labor" and material, and is based upon the general equitable principle that one should not enjoy the benefit thereof without making just compensation therefor. Le Grand v. Hubbard, 216 Ala. 164, 112 So. 826.

And it is not within the power of the owner, the contractor, or the contractor's surety, without the consent of the lienor, to destroy the statutory lien by stipulations in the contract or the bond directing the disposition of the unpaid balance resulting from the performance of the contract by the contractor, or one standing in his shoes. Nothing short of complete abandonment of the contract, or full performance and payment before the statutory notice is given, can deprive the lienor of his rights. Standard Sanitary Mfg. Co. v. Aird, 221 Ala. 520, 129 So. 285.

So, the crucial question is, Did the surety of the contractor, in electing to perform the contract between the owners and the contractor, and complete the work under that contract, stand in the shoes of the owners or in the shoes of the contractor? If in the shoes of the owners, then nothing further became due under the contract, and there was no unpaid balance to measure the complainants' rights or to which the statute could attach. On the other hand, if the surety, in completing the performance of the contract, stood in the shoes of the contractor, the same result followed as if the contractor itself had performed the contract.

There is no escape from the conclusion that the surety, in merely exercising the option to fully perform the contract made between Blue, Boswell and Hugger Bros., did not make a new contract with the owners, but stepped into the shoes of its principal—Hugger Bros.—and took up the contract of Hugger Bros., with the burden arising from the statute which fixed a lien on the unpaid balance superior to the right of the surety. 40 C. J. p. 308, § 405; 18 R. C. L. p. 908, § 36: Maneely, as Adm'r, etc., v. City of New York, 119 App. Div. 376, 105 N. Y. S. 976; Harley v. Mapes Reeves Construction Co., 33 Misc. 626, 68 N. Y. S. 191; Electric Transmission Company of Virginia v. Pennington Gap Bank, Inc., et al., 137 Va. 94, 119 S. E. 99; Stringfellow v. Coons & Golder, 57 Fla. 158, 49 So. 1019, 131 Am. St. Rep. 1089.

There is no privity of contract between the lienors and the surety, and the complainants have no right of action against the surety. Nevertheless, under the facts of this case, the owners, the contractor, and the surety are all interested and are proper, if not necessary, parties to the bill.

The circuit court erred in sustaining the demurrers to the bill, and the decree will be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.