**COVINGTON COUNTY BANK, Plaintiff,**

v.

**R. J. ALLEN & ASSOCIATES, INC., Robert J. Allen, Howard W. Alexander, All Enterprises, Inc., the Industrial Development Board of the City of Tuskegee, Alabama, Farmco, Inc., Hygroponics, Inc., Dean Woods and all other persons similarly situated, Roy Robertson and Gary Robertson, Partners, d/b/a Robertson & Son Building Supply, a partnership, Defendants.**

Civ. A. No. 75–8–N.

United States District Court, M. D. Alabama, N. D.

May 13, 1977.

---

William M. Warren, Jr., Hobart McWhorter, and C. Larimore Whitaker, Bradley, Arant, Rose & White, Birmingham, Ala., for plaintiff.

Thomas W. Thagard, Jr., Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, Ala., for The Industrial Development Bd. of the City of Tuskegee, Alabama.

William B. Moore, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., John F. Daniel, Sale, Bryant, Daniel & Thompson, Panama City, Fla., for Hygroponics, Inc.

J. Michael Rediker, Ritchie, Rediker & Warren, Birmingham, Ala., Roger J. Nichols, Nichols & Rose, Beverly Hills, Cal., John H. Blanton, Selma, Ala., for Dean Woods and all other persons similarly situated.

Philip Dale Segrest, Montgomery, Ala., for Roy Robertson and Gary Robertson, etc.

Robert E. Venney, Gunn, Venney & Buhler, Miami, Fla., for David L. Hughes, as Receiver of R. J. Allen & Associates, Inc.

MEMORANDUM OPINION

JOHNSON, District Judge.

Pursuant to order of the Court, this case is now submitted upon a supulated set of facts.

Before setting the stage for this drama, a list of some of the characters is in order. The leading character is Alexander & Allen, Inc., a Florida dealer in securities. Alexander & Allen, Inc., changed its name to R. J. Allen & Associates, Inc. (R. J. Allen) in 1974. R. J. Allen was engaged in the offering, selling, and underwriting of industrial development revenue bonds (IDR's),[1] including the 1973-All Bonds which were issued to finance the hydroponic farm project in Tuskegee. This suit arises out of that project. The president of R. J. Allen was Howard William Alexander. Alexander resigned as president of R. J. Allen in November, 1973. The next character, in order of appearance, is All Enterprises, Inc. (All), the lessee for the Tuskegee project. The president of All is Howard William Alexander; the secretary is Alexander's wife. All entered into a contract with A & A Enterprises, Inc. (A & A), whereby A & A would construct and manage the Tuskegee project. The president of A & A was Howard William Alexander.

Hygroponics, Inc., is a Florida-based corporation which, unlike the above-named characters, is still in business. Hygroponics contracted to supply the basic growing units for the hydroponic farm. Hygroponics has not been paid for some of the materials which it applied to the project. During September and October of 1974, 25 percent of Hygroponics was owned or controlled by Howard William Alexander. Robertson & Son Building Supply (Robertson) also supplied materials to the project for which it has not been paid.

This Court has jurisdiction under the Securities Exchange Act of 1934 § 27, 15 U.S.C.A. § 78aa. That section provides that the district courts have exclusive jurisdiction of suits for violations of the Act and for enforcement of the liabilities or duties created by the Act. Jurisdiction for the various state-law claims presented in the cross-claims and counterclaims is under the theory of pendent jurisdiction as applied in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[2]

The genesis of the case is in Tuskegee, Alabama, where the city fathers made a decision to seek new industry for the town. It was decided to create an Industrial Development Board (the Board) which would search out promising industry that would locate in Tuskegee, whereupon the Board would issue IDR's to finance construction of the project. The plan called for the Board to lease the project to the lessee-industry, with the money from the lease being used to repay the bonds.

The city decided upon a hydroponic farming project and began looking for a firm to carry out the project. After one abortive attempt, a Florida firm, All, was selected as the project company. The bond issue was prepared by drafting a Trust Indenture, naming Covington County Bank as Trustee, the Board as owner and mortgagor. The indenture was filed for public record in Macon County, Alabama, on January 23,

---

1. IDR's are a unique type of municipal bond which have the tax advantages of regular municipal bonds but which are not secured by the taxing power of the municipality. Lacking the backing of the sovereign's taxing power, the financial integrity of IDR's generally depends on having the principal and interest insured and on the integrity of the business which is to be the project lessee. *See SEC v. R. J. Allen & Associates, Inc.*, 386 F.Supp. 866 (S.D.Fla. 1974).

2. With the results reached in this opinion, the Bank no longer has any interest in the outcome of this suit. In a related action brought by the bondholders against the Bank and others alleging fraud under the securities laws and under Alabama law, the parties, including the Bank, have reached a tentative settlement agreement. *See Woods v. Covington County Bank*, Civil Action No. 75–18–N. Thus, the claims by and against the Bank arising out of its capacity as Trustee for the 1973-All Bonds all have been decided and in the order accompanying this opinion the Bank will be dismissed as a party. This action does not deprive the Court of jurisdiction over the pending state-law claims. *United Mine Workers v. Gibbs, supra.*

1974, the date the bond issue was closed. The indenture provided that part of the proceeds from the sale of the bonds would be placed in a Construction Fund, to be used to finance construction of the project. The Trustee was given a lien on this fund as security for the bonds sold to the bondholders. The bonds were sold,[3] and construction began on the project. At some point, it was discovered that R. J. Allen, which had been underwriting the bond issue and which, as it turns out, had masterminded this scheme as well as others involving IDR's, had engaged in various fraudulent securities practices with regard to these bonds. *See SEC v. R. J. Allen & Associates, supra.* The project collapsed and the scramble began for the funds that remained.

Sometime after the Securities and Exchange Commission began its action for securities fraud against R. J. Allen in the Southern District of Florida, the Trustee filed this Rule 22 action asking to have its rights and obligations under the Trust Indenture and the securities laws declared. At the time this action was filed, an interest coupon was due, which the Trustee had been paying. The Trustee feared that continued payments, as well as any other activity, might subject it to liability under the securities laws for aiding and abetting the violations for which R. J. Allen & Associates, among others, had been found guilty.

After this action was filed, the Court ordered the Trustee to pay into the Court the monies remaining from the sale of the bonds. This amounted to over two hundred thousand dollars. It is this money over which the parties are fighting. The only remaining active defendants are Hygroponics, Robertson and the bondholders. The other defendants either have settled or had default judgments entered against them.[4] Because there are not sufficient funds to pay all the claims, it is necessary for the Court to determine the priority among the various claimants.

The claims of Hygroponics and Robertson are based on materials supplied to the project.

Hygroponics is claiming $11,832.97. Hygroponics has a signed requisition from the Tuskegee Industrial Development Board for $9,856.45. The requisition was signed by a representative of Hygroponics on September 26, 1974, and by the secretary of the Industrial Development Board on October 13, 1974. The materials represented in the requisition were delivered to the project site and Hygroponics has not been paid for them. Hygroponics has not sought to perfect a lien for these materials under Alabama's lien law. *See* Title 33, § 37 Code of Alabama (Recomp.1958). The materials were sold on open account pursuant to an arrangement entered into between Hygroponics and A & A, the contractor for the

**3.** The Trust Indenture provided that the bonds were to be sold to the broker, R. J. Allen, at a discount and that all the bonds would be purchased at the closing. At the closing, only $94,000 of the bonds were picked up by the broker, although the Trustee's records indicate that eventually bonds in the face amount of $1,210,000 were delivered to the broker. *See Woods v. Covington County Bank*, Civil Action No. 75–18–N, pretrial order filed February 25, 1977.

**4.** There are other defendants in this action which have been or are the subject of counterclaims or cross-claims. Bondholders had asserted claims against the Industrial Development Board and against the Covington County Bank. These claims sought to recover from the Bank and the Board any money which the Court might award the claiming materialmen in this action. Because the Court is denying the claims of Hygroponics and Robertson, and be-

cause the other claimants have either settled or been dismissed from the case (except for Farmco, Inc.), these claims by bondholders will be dismissed.

L & W Farm Equipment Corporation, formerly L & W Farm Equipment Company, was dismissed by order of the Court on January 15, 1976. The claims against and by LP–Gas Industrial Equipment Corporation have been dismissed pursuant to a settlement which awarded LP–Gas possession of a 30,000 gallon gas tank.

Left outstanding are the claims asserted against Farmco, Inc., which has been served but which has not answered or filed any motions.

The original complaint included the Securities and Exchange Commission as a party defendant. The SEC subsequently was dismissed as a party.

project. Prior to the requisition in question, the Industrial Development Board had not signed any document evidencing any claim or right to claim by Hygroponics relative to the materials for which claim is being made in the requisition.

Robertson furnished materials to the project at the request of A & A pursuant to an oral contract between Robertson and A & A. The materials were furnished between April 13, 1974, and September 27, 1974. During this period, Robertson sent bills to A & A which A & A paid. The current balance in the account is $2,550.48. It was Robertson's understanding after talking with someone on the project believed by Robertson to be A & A's foreman that a construction fund had been established out of which was to be paid the cost of constructing the project, including materials furnished for construction. Within the time provided by Alabama law, Robertson recorded a lien for the materials furnished for which no payment had been received. Again within the time provided by law, a judgment was obtained on this lien, which judgment remains unsatisfied. No requisition has been submitted to or approved by the Industrial Development Board for materials furnished to the project by Robertson.

The bondholders are seeking in this case to block claims against the funds remaining after the collapse of the project. In a separate suit, bondholders are seeking to recover damages for losses suffered due to alleged fraudulent practices in connection with the issuance of the 1973-All Bonds. For the reasons set out below, the Court concludes that the claims of the bondholders are superior to those of Hygroponics and Robertson.

## I. THE TRUST INDENTURE

The Indenture provides that the Trustee has a lien in the Construction Fund which is "subject to the provisions of this Indenture pertaining thereto, including the making of disbursements therefrom." This lien is created "in order to secure the payment of the principal of and interest on the bonds according to their tenor and effect and the performance and observance by the Board of all the covenants expressed or implied herein and in the bonds." Section 207 of the Trust Indenture states:

This Indenture is given in order to secure funds to pay for new construction and by reason thereof, it is intended that this Indenture shall be superior to any laborers', mechanics' or materialmen's liens which may be placed upon the Project.

Article VI of the Indenture, which creates the Construction Fund and establishes the procedure for disbursing this money, provides:

Section 601. Accrued interest and the proceeds of the sale of the bonds (herein called "total sale proceeds") shall be disbursed and handled as follows:

. . . . .

(2) The balance of the total sale proceeds shall be deposited in a special account of the Board with the Trustee designated "Industrial Development Revenue Bond Construction Fund—All" (herein sometimes called the "Construction Fund"), from which the project costs accrued at time of closing, or delivery of bonds, are to be immediately paid.

Section 602. Moneys in the Construction Fund shall be expended for Project costs as set forth in Section 203 of the Lease Agreement which are not paid or disbursed at closing, as reflected by the closing statement. Such expenditures shall be in accordance with and pursuant to requisition which shall be signed by an Authorized Lessee Representative and an Authorized Lessor Representative. Each requisition shall specify:

(1) The name of the person, firm or corporation to whom payment is to be made;

(2) The amount of the payment;

(3) That the disbursement is for a proper expense of or pertaining to the Project; and

(4) The general classification of the expenditure.

The Trustee shall keep records concerning and reflecting all disbursements from the Construction Fund and shall file an accounting of disbursements if and when requested by the Board or All. The Trustee shall make payment from the Construction Fund pursuant to and in accordance with said requisitions.

Thus, under the Trust Indenture, the bondholders are given a superior lien to that of Robertson, who does not have a requisition signed by the lessor and lessee. The issue relative to Robertson turns on whether the filing and prosecuting to judgment of a lien under Alabama's lien law is sufficient to make Robertson's claim superior, or, in the alternative, whether the Court will create an equitable lien which is superior to that of the bondholders.

The issue relative to Hygroponics is whether its claim, over $9,000 of which concededly was made in compliance with the requisition procedure, is superior to the lien established by the Trust Indenture in favor of the bondholders.

The claims of Robertson and Hygroponics will be treated separately below.

## II. ROBERTSON'S CLAIMS

### A. Failure to comply with requisition procedure

In its brief, Robertson argues that it should be allowed to recover in spite of the fact that it does not have the required requisition. The basis for this argument is that the Trust Indenture created the Construction Fund for the express purpose of paying for construction costs, including the costs of materials. Robertson argues that it has met all the steps necessary to payment except obtaining a requisition, which it alleges is merely a "ministerial" function.

In view of the fact that in the past materials had been delivered by Robertson to the project for which Robertson had been paid without submitting the requisition required by Article VI of the Trust Indenture, Robertson argues that all necessary parties to the required requisition, including the lessee, the lessor, and the Trustee, have acquiesced in a course of conduct which led Robertson to believe that it would continue to be paid in the future without having a requisition executed in accordance with the Indenture.[5]

The requisition procedure established in the Trust Indenture is for the protection of the bondholders. Although Robertson may well have a valid claim against A & A for materials delivered to the project, it may not avoid the very safeguards established by the Indenture and then attempt to assert a superior claim against those for whose benefit the safeguards were established. The bondholders have the right in law and equity to insist that the terms of the Trust Indenture, which are conditions precedent to reimbursement from the construction fund, meet with substantial compliance. *See Belcher v. Birmingham Trust National Bank*, 348 F.Supp. 61 (N.D.Ala.), *stay denied*, 395 F.2d 685 (5th Cir. 1968); *Steed v. Carmichael*, 223 Ala. 193, 134 So. 885 (1931). Robertson has failed to prove either that the conditions in the Indenture have been waived or that the bondholders are estopped from asserting the conditions. *Cf. Batson v. Etheridge*, 239 Ala. 535, 195 So. 873 (1940) (estoppel); *Sims v. Hipp*, 216 Ala. 439, 113 So. 296 (1927) (waiver).

### B. Robertson's lien

Liens are an invention of the legislature and were unknown at common law.

---

5. As an additional ground in support of its claim, Robertson alleges that it discussed the method and procedure for payment with a foreman for the prime contractor for the project, A & A. Robertson indicates in its brief that this is one of the facts to which the parties have stipulated. This assertion is incorrect. The stipulation indicates that "Gary Robertson of Robertson & Son visited the construction site and talked with a person *believed by Robertson* to be A & A's building foreman." The stipulation goes on to state that "[c]ounsel for the bond holders do not know the identity of any such foreman and . . . contend such foreman, if he was such, was not an employee, agent or authorized representative of either All Enterprises, Inc. [the project lessee] or the Industrial Development Board [the project lessor]."

*See Wilkinson v. Rowe*, 266 Ala. 675, 98 So.2d 435 (1975); *Copeland v. Kehoe & Ramsey*, 67 Ala. 594 (1880). As the Alabama Supreme Court stated in *Copeland v. Kehoe & Ramsey, supra*:

> A builder's or mechanic's lien is purely statutory. Its character, operation and extent must be ascertained by the terms of the statute creating and defining it. Of itself, it is a peculiar, particular, special remedy given by statute, founded and circumscribed by the terms of its creation, and the courts are powerless to take it up where the statute may leave it, and extend it to meet facts and circumstances, which they may believe present a case of equal merit, or a necessity of the same kind, as the cases or necessities for which the statute provides.

67 Ala. at 597.

Title 33, sections 37–64 of the *Code of Alabama* governs the creation and effect of materialmen's liens. Section 37 provides:

> Every mechanic, person, firm, or corporation who shall . . . furnish any material . . . for any building or improvement on land, . . . under or by virtue of any contract with the owner or proprietor thereof, or his agent, . . . trustee, contractor, or subcontractor, upon complying with the provisions of this article, shall have a lien therefor on such building or improvements and on the land on which the same is situated, to the extent in ownership of all the right, title, and interest therein of the owner or proprietor . . . ; or, *if employees of the contractor or persons furnishing material to him, the lien shall extend only to the amount of any unpaid balance due the contractor by the owner or proprietor, and such employees and materialmen shall also have a lien on such unpaid balance.* But if the person, firm, or corporation, before furnishing any material, shall notify the owner or his agent in writing that such certain specified material will be furnished by him to the contractor or subcontractor for use in the building or improvements on the land of the owner or proprietor at certain specified prices, unless the owner or proprietor or his agents objects thereto, the furnisher of such material shall have a lien for the full price thereof as specified in the notice to the owner or proprietor without regard to whether or not the amount of the claim for such material so furnished exceeds the unpaid balance due the contractor, unless on the notice herein provided for being given, the owner or proprietor or his agent shall notify such furnisher in writing before the material is used, that he will not be responsible for the price thereof.

(Emphasis added).

In *McCleskey v. Finney*, 272 Ala. 194, 197, 130 So.2d 183, 185 (1961), the Alabama court noted that the "cases are uniform in holding that a mechanic's or materialman's lien is not allowable in equity independently of statute, and where such statutory authority is relied upon, there must be strict compliance therewith." Emphasis was again placed on the need to comply with the statutory procedures in *Home Federal Savings & Loan Association v. Williams*, 276 Ala. 37, 158 So.2d 678 (1963): " 'The lien the materialman or mechanic acquires is by virtue of the statutes only, and *the requirements of the statutes as to acquiring and enforcing it must be pursued, else it is lost or does not exist.*' " 276 Ala. at 43, 158 So.2d at 683 *quoting Sorsby v. Woodlawn Lumber Co.*, 202 Ala. 566, 81 So. 68 (1919) (emphasis in original and added). *Accord, Tucker v. Trussville Convalescent Home, Inc.*, 289 Ala. 366, 267 So.2d 438 (1972); *Security Transactions, Inc. v. Nelson Excavating & Paving Co.*, 55 Ala.App. 223, 314 So.2d 297, *cert. denied*, 294 Ala. 768, 314 So.2d 304 (1975). It is undisputed that Robertson has a valid materialman's lien. Indeed, the Alabama courts have awarded Robertson a judgment *against A & A* on this lien. What remains is to determine the character of Robertson's lien with regard to the bondholders.

The clear rule with regard to priority of liens in Alabama is that a mortgagee's lien based on a recorded mortgage takes precedence over the lien of a materi-

alman for materials delivered to the construction site *subsequent* to the recording of the mortgage. *Polakow v. Rumsey*, 242 Ala. 365, 6 So.2d 477 (194?). This is true despite the fact that the mortgagee, prior to recording its mortgage, had access to plans showing the materials to be incorporated into the project and despite the fact that prior to recording of the mortgage, the materialman had begun fabricating the materials to be used in the project. *Gamble's Inc. v. Kansas City Title Insurance Co.*, 283 Ala. 409, 217 So.2d 923 (1969). And the burden of proof is on the materialman to show that its lien attached prior to the recording of the mortgage. *Gamble's Inc., supra.*

■ Therefore, since the Trust Indenture was recorded January 23, 1974, and since Robertson did not even *discuss* the furnishing of materials until April 13, 1974, the Court concludes that Robertson has failed completely to meet its burden of proof to show that its lien attached prior to the mortgage in favor of the bondholders. Under both the terms of the Trust Indenture and the applicable Alabama law, Robertson's lien is inferior to the lien of the bondholders.

In addition, Robertson's claim must be denied because under Title 33, Section 37 of the *Code of Alabama*, Robertson's lien is limited to the amount left owing the contractor by the owner. As the bondholders point out, there is nothing in the record or the stipulated facts which would indicate

that Robertson ever had any dealing, direct or indirect, with the owner of the project, the Industrial Development Board, or with the lender, the bondholders as represented by the Trustee. In addition, there are no facts which would indicate that the Board or the Trustee ever had any knowledge of Robertson's furnishing materials to the project. Even assuming that the person with whom Robertson dealt was A & A's construction foreman, the verbal agreement was between Robertson and A & A, the contractor, not with the lessee, All. That Robertson understood its contract to be with A & A, and not with All, the bondholders, or the owner, is evidenced by the fact that Robertson filed and prosecuted its lien against A & A.

■ Because Robertson furnished materials to the contractor and not to the owner, its lien extends only to the unpaid balance owing to the contractor, unless Robertson furnished the owner, the Industrial Development Board, notice pursuant to Section 37 of Robertson's intent to furnish materials. That notice must indicate the materials that are to be furnished, when they are to be delivered, and the price of the materials. Title 33, § 37, *Code of Alabama.* The record is devoid of any facts that would indicate that Robertson furnished, or even attempted to furnish, such notice to the owner or its agent.[6]

■ The notice requirement in Section 37, applicable to a materialman who deals with the contractor rather than the owner,

---

**6.** Although it may be argued that the contractor is the "agent" of the owner, a close reading of the statute indicates that the Legislature felt otherwise. The statute provides that when the materials are furnished a contractor rather than the owner, notice must be given the owner or its agent in order to have a lien for the full amount of the materials. If the contractor was considered an agent of the owner, it would not be necessary, when dealing with the contractor, to give the owner written notice because the owner would already "know." Acceptance of such a tenuous argument would defeat not only the underlying policy of Section 37, but also the clear import of its language. As the Alabama Supreme Court noted in *Lehman, Durr & Co. v. Robinson*, 59 Ala. 219, 234–35 (1877):

In construing a statute, regard must be had to the whole act, and, if need be, to other statutes passed on the same subject; for it frequently happens that the meaning of one clause is shown by another that is not stated in connection with it. The object being to ascertain the framer's intention in the use of the language he employs, that intention is oftentimes more certainly learned by comparing one clause with another, and noting their correspondences and differences. In *Sedg. on Cons. and Stat. Law*, page 200, *it is* said that "in construing any part of a law, the whole must be considered; the different parts reflect light on each other; and, if possible, such a construction is to be made, as will avoid any contradiction or inconsistency."

was enacted for the protection of the owner. See *Rayborn v. Housing Authority of Washington County*, 276 Ala. 498, 164 So.2d 494 (1964); *Le Grand v. Hubbard*, 216 Ala. 164, 112 So. 826 (1927). Operation of the statute has meant that a materialman who failed to provide the required notice was left with nothing when there was no balance owed by the owner to the contractor. *Lupton's Sons Construction Co. v. Hugger Brothers Construction Co.*, 227 Ala. 25, 148 So. 610 (1933). Since nothing is owed, the contractor, Robertson, gets nothing.

### C. Equitable liens

■ In order to avoid this effect, Robertson argues that it is "entitled to recover based on its equitable lien." Robertson attempts to support this untenable position with California authority. Assuming *arguendo* that under California law Robertson would be entitled to an equitable lien, it is clear that under the law of Alabama, equitable liens are not recognized. In *Emanuel v. Underwood Coal & Supply Co.*, 244 Ala. 436, 14 So.2d 151 (1943), the Alabama Supreme Court stated the general rule with regard to materialmen's liens:

> It has long been recognized that a materialman's lien is of peculiar statutory creation, and as said in *Copeland v. Kehoe & Ramsey*, 67 Ala. 594, it is "founded and circumscribed by the terms of its creation, and the courts are powerless to take it up where the statute may leave it, and extend it to meet facts and circumstances, which they may believe present a case of equal merit, or a necessity of the same kind, as the cases or necessities for which the statute provides."

244 Ala. at 440, 14 So.2d at 154. The Alabama court went on to note that a "materialman's lien is not allowable in equity independently of statute." *Id.* This is still the rule in Alabama. *See McCleskey v. Finney*, 272 Ala. 194, 130 So.2d 183 (1961). Left with nothing by the lien statutes, Robertson may not now come into this Court and ask to be given what the Alabama Legislature refuses to give.

■ Robertson argues that its equitable claim is supported by *Security Federal Savings & Loan Association v. Underwood Coal & Supply Co.*, 245 Ala. 56, 16 So.2d 100 (1943). In *Security Federal*, the Alabama Supreme Court *reversed* the lower court decision allowing a materialman to recover under an equitable lien. Not only is the case distinguishable from the claim of Robertson, but the teaching of the case argues against granting Robertson's claim.

> Our statutory system provides the only lien legal or equitable available to a materialman as such, and without more. *Emanuel v. Underwood Coal & Supply Co.*, Ala.Supp., 244 Ala. 436, 14 So.2d 151. This cannot be enlarged except by contract express or implied, or by some *established* equitable principle based on the maxims of equity on a consideration of right and justice. . . .

> . . . Equity does not impose on the owner any enforceable duty to protect the materialmen, except as the statute or a contract so requires. . . .

> It must be noted that the asserted claim did not come into existence until the fund had been paid to the contractor, who owed the materialman, or had been paid directly to him. It was not held to exist while the fund was in the hands of the owner or a lender to the owner in the absence of a contract having that effect. We know of no case which does so . . . .

> To hold that a materialman has an equitable claim in a fund in the hands of a lot owner (or lender to him), who has engaged a contractor to build a house for a fixed sum as completed, payable in installments as the work progresses, when there is a stipulation between the owner (or lender) and contractor that the installments shall not be paid until proof is furnished to the owner that the contractor has paid bills for material, and the materialman is informed of that fact and relies and acts on the assumption that such arrangement will be complied with, and the owner contemplates that he will

do so, is as far as we think the principle of equity based on contract or estoppel will extend relief to the materialman, so far as here pertinent.

245 Ala. at 61–63, 16 So.2d at 102–104. In the present case, the only "stipulation" is that contained in the Trust Indenture, which provides that the lien of the bondholders is superior to that of materialmen and that the procedure for paying materialmen is by requisition. There is nothing in the record that would indicate that there were any other agreements, oral or otherwise, by the owner (the Board) or the lender (the bondholders) on which Robertson could rely. Neither are there any facts in the record, and Robertson does not allege any, to indicate that Robertson ever had any dealings with the owner of the project (the Industrial Development Board), the lender (the bondholders) or the agent of the lender (the Trustee, Covington County Bank). The Court concludes that there was no contract or agreement by the owner or lender to allow Robertson or anyone else to avoid the requisition procedure set out in the Indenture of Trust. Therefore, under the teachings of the *Security Federal* case, Robertson does not have even a colorable equitable lien. Accordingly, its claim for recovery is denied.

### III. CLAIMS OF HYGROPONICS

■ Although Hygroponics, like Robertson, is claiming a right of recovery pursuant to an equitable lien theory, unlike Robertson, Hygroponics has made no attempt to comply with the statutory formalities for liens. Consequently, it does not have even a colorable claim to recovery based on lien law. *See Tucker v. Trussville Convalescent Home, Inc., supra; Security Transactions, Inc. v. Nelson Excavating & Paving Co., supra; McCleskey v. Finney, supra.* All that Hygroponics has in support of its claim is a signed requisition for $9,856.45 of its claim. Under Alabama law, even in equity there must be strict compliance with the statutory formalities. *See McCleskey v. Finney, supra.* Assuming that there existed an enforceable lien, whether equitable or otherwise, under both

Alabama law and the express terms of the Trust Indenture, that lien would be subordinate to the lien of the Trustee in favor of the bondholders. *See Empire Home Loans, Inc. v. W. C. Bradley Co.,* 286 Ala. 449, 241 So.2d 317; *Gamble's Inc. v. Kansas City Title Insurance Co., supra.*

■ In addition, Hygroponics is in no position to invoke the equitable powers of this Court. As Mr. Justice Taney noted as far back as 1843, in *McKnight v. Taylor,* 42 U.S. (1 How.) 161, 11 L.Ed. 86 (1843), "There must be conscience, good faith, and reasonable diligence, to call into action the powers of the [equity] court." *Id.* at 168; accord, *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946). The equitable maxim of "unclean hands" is as applicable in cases involving securities as in other areas of the law. As the Fifth Circuit has noted:

> While the defense of "unclean hands" is available in securities actions in this Circuit, . . . its application rests within the sound discretion of the District Court. Whether the defense is allowed should be determined by ascertaining whether the application or nonapplication of the defense will better promote the objectives of the securities laws by increasing the protection afforded the investing public.

*Wolf v. Frank,* 477 F.2d 467, 474 (5th Cir.), *cert. denied,* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973).

In the stipulation of facts filed on behalf of Hygroponics, it is stated that, in September and October of 1974, 25 percent of Hygroponics "was owned or controlled by Howard William Alexander through A & A Enterprises, Inc." Alexander and A & A Enterprises were principal parties in the suit filed by the Securities and Exchange Commission. *See SEC v. R. J. Allen & Associates,* 386 F.Supp. 866 (S.D.Fla.1974). In the *R. J. Allen* case, the court found that "[R. J.] Allen and Alexander together with the other defendants concocted a scheme to deceive and defraud investors." In discussing the project which is the basis of the

**424**

action now before this Court, the Florida district court described the activities of Alexander and company as follows:

> In connection with one particular IDR, Tuskegee, Alabama, IDR's for All Enterprises, Inc., the defendants failed to disclose to the investors that Allen and Alexander were principals of All Enterprises, and A & A Enterprises, a related company, and would derive substantial benefits from any sales of that bond issue. The evidence discloses that All Enterprises received in excess of $550,000 from that bond issue on requisitions put in by Alexander which were not verified by the Tuskegee Industrial Development Board.

386 F.Supp. at 873. The Florida court went on to find:

> In summary, the evidence in this case described a horrible fraud, one that has been vicious and brutal. It is difficult to imagine how anyone could contrive and execute a more diabolical scheme. It has effectively defrauded and cheated the customers of R. J. Allen who purchased IDR's, many of whom have been left destitute. Indeed, the proof of all of the fraud allegations contained in Count I of the Commission's Complaint has been conclusive and overwhelming with respect to each defendant, separately and collectively, *particularly including the defendant Alexander.*

386 F.Supp. at 874 (emphasis added).

In light of its involvement with Alexander and A & A Enterprises, this Court will not now let itself be used by Hygroponics to collect money owed from Hygroponics' participation in the above-described scheme. Whether Hygroponics' involvement with Alexander was with knowledge of the scheme being perpetrated or whether Hygroponics allowed itself to be deceived, the doors to equity are shut and will remain so.

An order will be entered in accordance with this opinion.